Dominick A. CARUCCI and Edith L. Carucci, his wife, Plaintiffs,

v.

Kathleen M. VAN DYKE, Defendant and Third Party Plaintiff,

v.

NATIONWIDE INSURANCE COMPANY, an Ohio Corporation, Third Party Defendant.

Superior Court of Delaware, New Castle County.

Submitted Aug. 16, 1978.

Decided Sept. 1, 1978.

Albert L. Simon, Wilmington, for plaintiffs.

Raymond L. Becker of Becker, Ferri & Otlowski, Wilmington, for defendant.

Wayne N. Elliott of Prickett, Ward, Burt & Sanders, Wilmington, for Nationwide Ins. Co.

TAYLOR, Judge.

Plaintiff was injured in a motor vehicle collision February 20, 1976. He has not worked since that time. His personal injury protection policy provided $100,000 coverage. The PIP insurer paid plaintiff $27,-

045.73 for lost wages and medical expenses covering the period to February 20, 1978, two years after the accident, and has refused to make further payment to plaintiff.

Plaintiff seeks to introduce evidence at trial of all lost earnings and probable future medical expenses after February 20, 1978. Defendant contends that evidence of future lost earnings and future medical expenses should be limited to those incurred after plaintiff's PIP coverage has been exhausted.[1]

21 Del.C. § 2118(g) provides that a "person eligible for benefits described in paragraph (2) or (3)[2] of subsection (a) . . . is precluded from pleading or introducing into evidence in an action for damages against a tort-feasor those damages for which compensation is available under [the above paragraphs] . . . whether or not such benefits are actually recoverable." Therefore, the test of admissibility of the proffered line of testimony involves a determination of whether plaintiff is eligible for benefits described in 21 Del.C. § 2118(a)(2).

§ 2118(a)(2)a. requires minimum insurance coverage for "[c]ompensation to injured persons for reasonable and necessary expenses incurred within 2 years from the date of the accident" for expenses and losses specified in the subparagraphs which follow. Subparagraph 1 covers medical, hospital, dental, surgical, medicine, X-ray, ambulance, prosthetic services, professional nursing and funeral services. Subparagraph 2 covers net lost earnings. Subparagraph 4 covers extra expenses for personal services which would have been performed by the injured person if the injury had not occurred. The text of subparagraphs 1, 2 and 4 is in harmony with the two-year limitation found in the preambular language which precedes the subparagraphs. Subparagraph 3 is a departure from that limitation.[3] The itemization in subparagraph 3

---

1. No question has been raised as to the applicability of the subsection (g) to coverage in excess of the statutory minimum.

2. The designation of paragraph (3) in the above quotation fails to reflect the format of the section under the 1975 amendment which incorporated the substance of the former paragraph (3) into paragraph (1). 59 Del.Laws Ch. 574.

3. "3. Cost of dental or surgical procedures, medical expenses including related treatment

is "[c]ost of dental or surgical procedures, medical expenses including related treatment and the net amount of lost earnings".[4] Items qualify under that subparagraph only if

"the necessity of which have been medically ascertained within 2 years from the date of the accident but which are impractical or impossible to perform during that period and as to which verification that such procedures or treatments will be necessary has been made in writing by a qualified medical practitioner within 2 years from the date of the accident."

This language specifies three qualifying factors which must be present: (1) ascertainment of necessity before expiration of the 2-year period, (2) impracticality or impossibility of performing the procedures or treatment within the 2-year period and (3) written verification within the 2-year period that the procedures or treatment will be necessary. All of these qualifying factors are compatible with the items mentioned in the subparagraph with the exception of lost earnings. The portion of the quoted language following the word "but" which refers to "impractical or impossible to perform" and "verification that such procedures or treatments will be necessary" can have no relationship to the subject of lost earnings because lost earnings are not performed and they are not procedures or treatments. Since the latter two qualifying factors cannot be applied to lost earnings, it is contended that when considering lost earnings these factors should be ignored and that if the requirement of ascertainment is satisfied future lost earnings are covered under the subparagraph. In addition, in order to apply this construction, the wording of the last sentence of the subparagraph must be ignored or given a strained construction, since it refers to payment "of this cost . . . at the time they are

ascertained or at the time they are actually incurred," and lost earnings are not ordinarily described as a cost incurred.

An alternative to giving broad effect in subparagraph 3 to the reference to lost earnings is to limit the lost earnings to those which relate to procedures or treatment covered by the subparagraph. The subject of subparagraph 3 is "[c]ost of dental or surgical procedures, medical expenses including related treatment and the net amount of lost earnings". If the words "including related treatment and the net amount of lost earnings" are considered as a clause qualifying the words "dental or surgical procedures, medical expenses" and if the word "related" is considered to apply to both "treatment" and "lost earnings", the "lost earnings" covered by the subparagraph are those which are related to the dental and surgical procedures and medical expenses which qualify under the subparagraph. No punctuation or usage indicates a legislative intention to restrict the effect of the word "related" to the word "treatment". The words "treatment" and "the net amount of lost earnings" are joined by the conjunctive word "and", without isolating punctuation. I conclude that the word "related" describes both the type of lost earnings and the type of procedures or treatment to which the subparagraph applies. Hence, the lost earnings and treatment must relate to dental or surgical procedures, or medical expenses which qualify under subparagraph 3. By this construction, all of the limiting factors stated in subparagraph 3 are applicable to lost earnings as well as to procedures and treatments and the prospect of protracted period for payment of lost earnings disparate from that involving procedures and treatments cannot exist.

---

and the net amount of lost earnings, the necessity of which have been medically ascertained within 2 years from the date of the accident but which are impractical or impossible to perform during that period and as to which verification that such procedures or treatments will be necessary has been made in writing by a qualified medical practitioner within 2 years from the

date of the accident. The payment of this cost shall be either at the time they are ascertained or at the time they are actually incurred, at the insurer's option."

4. Lost earnings for the first two years after the accident are covered by subparagraph 2.

The interpretation discussed in the preceding paragraph gives full effect to all of the pertinent statutory language. *Martin v. American Potash & Chemical Corp.*, Del. Supr., 92 A.2d 295 (1952). It appears to produce the most consistent and harmonious result under the wording of the section. *Nationwide Mutual Insurance Co. v. Krongold*, Del.Supr., 318 A.2d 606 (1974).

It is argued that the risk of prolonged loss of earnings should rest upon the insurer of the injured person rather than upon the insurer of the tort defendant. In view of the statutory meaning which the Court has found persuasive from an analysis of the statutory language, the Court does not feel called upon to engage in balancing of equities. This is a policy question which more properly should be addressed to the legislature if it is to be pursued. It should be noted, however, that the argument runs counter to the collateral source rule that a wrongdoer is not entitled to the benefit of moneys received by an injured party from a source not related to the wrongdoer. *Melson v. Allman,* Del.Supr., 244 A.2d 85 (1968); *Yarrington v. Thornburg,* Del.Supr., 205 A.2d 1 (1964).

In summary, I conclude that the lost earnings contemplated by § 2118(a)(2)a.3. are only those which directly relate to procedures and treatment which qualify under that subparagraph.

Unless it is shown that an item of damages falls within § 2118(a)(2) if it meets the ordinary tests of admissibility, pertinent evidence thereof may be admitted in the suit by the injured person. Since the statute considered here is a limitation upon common law admissibility, the burden of showing that an item of damages should be excluded because it is covered by § 2118(a)(2) rests upon the party who seeks to exclude the evidence. Cf. 29 *Am.Jur.2d* Evidence §§ 147, p. 180; *Federal Trade Commission v. Morton Salt Co.*, 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed.2d 1196 (1948); 130 *A.L.R.* 475 et seq.; 3A *Corbin on Contracts* § 751, p. 475; *McCormick on Evidence* (2d Ed.) § 337, p. 788. Applying this ruling to the medical opinions which have been submitted with the briefs, I conclude that since these opinions did not ascertain that dental or surgical procedures or treatment would be necessary after February 20, 1978, no showing has been made that there are or will be lost earnings which would qualify under § 2118(a)(2)a.3. Hence, based upon what has been presented, introduction of evidence of probable lost earnings for the period after February 20, 1978 will not be excluded.

IT IS SO ORDERED.