UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland Corporation, Plaintiff, Appellee/Cross Appellant,

v.

Christine F. NEIGHBORS, Executrix of the Estate of George M. Neighbors, Defendant, Appellant/Cross Appellee,

Joseph J. Iezzi, Sr., and Delores Z. Iezzi, Individually and as Co–Administrators of the Estate of Joseph J. Iezzi, Jr., et al., Defendant, Appellant/Cross Appellee.

Supreme Court of Delaware.

Submitted June 3, 1980.

Decided Sept. 8, 1980.

Frederick W. Iobst (argued), of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff, appellee/cross appellant U. S. Fidelity and Guaranty Co.

Bernard A. Van Ogtrop (argued), of Cooch & Taylor, Wilmington, for defendant, appellant/cross appellee, Christine F. Neighbors.

James E. Higgins (argued), L. Vincent Ramunno, Wilmington, for defendant, appellant/cross appellee, Joseph J. Iezzi, Sr., and Delores Z. Iezzi.

Before DUFFY, McNEILLY and HORSEY, JJ.

HORSEY, Justice:

This appeal concerns construction of 21 *Del.C.* § 2118, Delaware's no–fault insurance law, and an automobile insurance policy's no–fault coverage benefits. Under § 2118(a)(2)a, all motor vehicles registered in Delaware must carry insurance to compensate injured persons for, among other thing, net "lost earnings" incurred within two years from date of accident.[1] Two

---

1. At the time of the accident which is the subject of this action, 21 *Del.C.* § 2118(a)(2)a provided in pertinent part as follows:

"Compensation to injured persons for reasonable and necessary expenses incurred

questions are presented: (1) whether the loss of a periodic draw of a self-employed person is compensable as "lost earnings" and (2) whether the actuarial lifetime earnings of an individual dying within the two year statutory period are recoverable as lost earnings "incurred within 2 years from the date of the accident." [2]

Joseph J. Iezzi, Jr., and George M. Neighbors were killed in an automobile accident in February, 1978. Their automobile was insured by United States Fidelity and Guaranty Company (USF&G), a Maryland corporation. Its no-fault insurance policy provision as to loss of earnings defined the term as follows:

> " 'Loss of earnings' means any amount actually lost, net of taxes on income which would have been applied by reason of inability to work and earn wages or salary or their equivalent that would otherwise have been earned in the normal course of an injured person's employment but not other income."

At the time of Neighbors' death, he was self-employed as sole proprietor of a gasoline service station from which he drew income periodically. In 1976 his draw amounted to $10,612.98; and in 1977 he drew $10,208.18.

USF&G paid Iezzi's estate for two years' lost wages; but USF&G refused to pay Neighbors' lost earnings claim—contending that Neighbors' periodic draw represented a distribution of "profits" rather than lost earnings within the meaning of § 2118(a)(2)a or its policy definition of "loss of earnings." USF&G also denied claims asserted by both estates that § 2118(a)(2)a entitled them to the net amount of lost earnings for the actuarial lifetime of their respective decedents.

> within 2 years from the date of the accident for:
>
> .    .    .    .    .
>
> 2.   Net amount of lost earnings."

**2.** As a result of legislation enacted effective June 13, 1978, § 2118(a)(2)a was amended by 61 *Del.Laws*, c. 320, by adding subparagraph a.5. which provides as follows:

Christine F. Neighbors, executrix of the Will of George M. Neighbors, and Joseph J. Iezzi, Sr. and Delores Z. Iezzi, individually and as co-administrators of the estate of Joseph J. Iezzi, Jr., appeal Superior Court's declaratory judgment ruling limiting their recovery to earnings lost within two years of the accident; and USF&G cross-appeals the Court's allowance of any earnings award to Neighbors' estate.

I

As to whether Neighbors' periodic draws were compensable as lost earnings, and hence recoverable from his no-fault carrier, the Court below viewed the question as a mixed one of fact and law. As to the facts, the Court found that, notwithstanding some fluctuation in the precise amount of the draws, "a base minimum draw [was] ascertainable" so as to represent a predictable income. As to the law, the Court found that recovery of the draw was (a) consistent with the objectives of § 2118 and interpretative case law; and (b) within USF&G's policy coverage as the "equivalent" of wages or salary. Therefore, the Court held that USF&G was liable under its policy to the extent of Neighbors' base minimum draw. We affirm as to both the facts and the law.

In *Downs v. Lumbermans Mutual Casualty Co.*, Del.Super., C.A. No. 442, 1974 (May 25, 1976), loss of business profits of a self-employed person were held not to be the equivalent of "loss of earnings" under the then-language of § 2118(a)(2). The Court in *Downs* reasoned as follows:

> "Proof of damages by a self-employed person has often been a complex and controversial subject in tort cases. *Sears, Roebuck and Co. v. Facciolo*, Del.Supr., 320 A.2d 347 (1974). This subject does not lend itself to the prompt non-judicial

> "5. 'Injured person' for purposes of this section shall include the personal representative of an estate; provided, however, that if a death occurs, the 'net amount of lost earnings' shall include only that sum attributable *to the period prior to the death of the person so injured*."

settlement contemplated in the no–fault statute. I am of the opinion that if the no–fault statute was intended to cover loss of business profits, it would have been necessary to use more explicit language.

. . . . .

If plaintiff suffered a simple loss of earnings (loss of wages or salary) as a result of the accident, he must look to his own no–fault insurance carrier for recovery. But, if the loss claimed was from hiring others at his place of business or from lost business profits, the no–fault statute finds no application and plaintiff must look to the tort–feasor."

We agree with the Court below that *Downs* and *Klaus v. Nationwide*, Del.Super., C.A. No. 287 (1976) (which followed *Downs* and held loss of income from a farming operation conducted by an injured person not to be recoverable under the no–fault statute) are distinguishable on their facts from this case.

"Accepting, for purposes of this decision, the premise stated in *Downs* that the payments contemplated under § 2118 were payments which could be easily ascertained without substantial dispute, where a business has established a regular and periodic draw which is in effect at the time of the accident and has been in effect for a sufficient time to be predictable, the problems which impelled the exclusion of business profits and farm profits under *Downs* and *Klaus* would not be present and hence would be entitled to the same treatment as salary and wages. In such instance the economic dependence upon a regular draw would be indistinguishable from the dependence upon salary and wages. Such an application is in harmony with the objectives of the statute, reconciles with the reasoning of *Downs* and *Klaus*, is consistent with the quoted language of § 2118, and  would properly be considered the equivalent of wages or salary, as those words are used in the definition contained in the insurance policy issued by plaintiff."

Since the Court below found Neighbors' base minimum draw to be "ascertainable", it represented predictable income. Thus, his draws were more akin to a salary than to a distribution of profits. Hence, Neighbors' periodic draws come within the scope of payments contemplated under § 2118 and constitute the kind of special damages for which redress is to be sought from one's own carrier under § 2118(g) rather than from a tort–feasor. *See Webster v. State Farm Mutual Automobile Insurance Company*, Del.Super., 348 A.2d 329 (1975).

This result is also consistent with the statutory objective of § 2118–of enabling an injured party in a motor vehicle accident to receive from his own carrier ". . . the economic benefit of immediate payment without awaiting protracted litigation." *DeVincentis v. Maryland Casualty Co.*, Del.Super., 325 A.2d 610, 612 (1974). Therefore, we affirm on the first question.

## II

The remaining issue raised by cross–appeal is whether, under § 2118(a)(2)a and the insurance policy in question, lost earnings of a decedent's estate are recoverable from decedent's carrier beyond two years from the date of an accident and for a decedent's work–life expectancy.

The constructional issued here raised as to § 2118(a)(2)a.2 will not reoccur by reason of the enactment, effective June 13, 1978, of subparagraph a.5 of § 2118(a)(2), set forth above. Section 2118 as amended by subparagraph a.5 now clearly limits a lost earnings claim, where death occurs, to earnings "attributable to the period prior to the death of the person so injured."

Both estate representatives claim that decedents' earnings for their actuarial work–lives were compensable under § 2118(a)(2)a.2, as of their deaths in February, 1978, because their loss of future income could be computed and thus be ascertained as of date of death. Therefore, it is argued that since decedent's actuarial earnings could be ascertained within the two–year period, the loss of all their future earnings were "incurred" within the re-

quired period. The USF&G no fault policy coverage adopted the language of the statute in providing for an injured party's recovery of loss of earnings, "incurred within two years from the date of the accident," with the term, "loss of earnings" defined as set forth above.

In *Ricks v. Coffelt*, Del.Supr., 369 A.2d 680 (1977), we construed § 2118 aas contemplating no–fault coverage actions by and recovery to a personal representative of a decedent's estate, including claims for loss of earnings. We did not decide whether lost earnings were recoverable by a personal representative beyond two years from date of accident.

The problem arises with the use of the word "incurred" in the introductory language of § 2118(a)(2)a where it is used in reference to "expenses" as defined in the following subparagraphs 1 through 4 and the term's inartful application to "lost earnings" under subparagraph 2 thereof.[3]

The Court below held that lost earnings are not "incurred" during the two–year compensable period until such sums would have otherwise been earned and received by an insured but for his injuries. In other words, lost earnings are only "incurred" as losses are experienced through non–payment of such earnings. We agree.

The personal representatives' reliance upon *Carucci v. Van Dyke*, Del.Super., 394 A.2d 246 (1978), is misplaced. In *Carucci* it was held that to be eligible under § 2118(a)(2)a.3 for recovery of lost earnings incurred beyond two years, "all of the limiting factors stated in subparagraph 3" must be fulfilled, namely, "(1) ascertainment of necessity before expiration of the 2–year period, (2) impracticality or impossibility of performing the procedures or treatment within the 2–year period and (3) written verification within the 2–year period that the procedures or treatment will be necessary." 394 A.2d at 248. As the Court below stated, "If . . . the draftsman of the statute had contemplated that paragraph 2 would encompass all future lost earnings which were foreseeable or ascertainable within the two–year period, there would have been no need for including any reference to lost earnings in paragraph 3 since ascertainment would have been a requisite to eligibility under paragraph 2."

The legislative history of § 2118 reveals legislative intent to limit the reach of the statute to an earnings loss actually sustained within two years of the date of an accident. As the Trial Judge pointed out,

> "The history of the no–fault statute bears reference. In its initial form 21 Del.C. § 2118 contained somewhat different language and provided for compensation for reasonable and necessary medical expenses and for loss of earnings "incurred or medically ascertainable within 12 months of said accident." From the use of both "incurred" and "ascertainable" in the disjunctive, it appears that the statute did not consider "incur" to encompass that which was ascertainable or foreseea-

---

**3.** Subparagraph (2)a of § 2118(a) then provided as follows:

"(2)a. Compensation to injured persons for reasonable and necessary expenses incurred within 2 years from the date of the accident for:

    1. Medical, hospital, dental, surgical, medicine, x–ray, ambulance, prosthetic services, professional nursing and funeral services. Compensation for funeral services shall not exceed the sum of $2,000. Compensation may include expenses for any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

    2. Net amount of lost earnings.

    3. Cost of dental or surgical procedures, medical expenses including related treatment and the net amount of lost earnings, the necessity of which have been medically ascertained within 2 years from the date of the accident but which are impractical or impossible to perform during that period and as to which verification that such procedures or treatments will be necessary has been made in writing by a qualified medical practitioner within 2 years from the date of the accident. The payment of this cost shall be either at the time they are ascertained or at the time they are actually incurred, at the insurer's option.

    4. Extra expenses for personal services which would have been performed by the injured person had they not been injured."

ble. In this context, "incurred" referred to earnings whose loss was experienced in the then 1–year period while earnings whose loss was experienced thereafter would be compensable if ascertainable during the 1–year period. Under that language "incurred" meant earnings which would have been earned or received during the period. The section was revised substantially by 59 Delaware Laws Chapter 574 which became effective January 1, 1975 and contained the language discussed above. The 1975 revision retained the word "incurred" with respect to lost earnings, extra expenses and medical expenses and eliminated any reference to matters which were "ascertainable". The concept of "ascertainable" expenses was replaced, insofar as medical expenses and lost earnings related to medical treatment were concerned, by the requirement that they be "ascertained" within a 2–year period. However, this provision does not apply to lost earnings that are not related to medical treatment performed after the 2–year period. *Carucci v. Van Dyke,* supra. In view of this legislative history, I find no basis for concluding that the legislature intended the word "incurred" as used in the 1975 revision to have a different meaning than it had in the original statute."

To adopt the estate representatives' construction of § 2118(a) as to lost earnings would, as the Court below stated, "provide special benefits with respect to a permanently disabled person or one who is killed which are not available to one who has been temporarily disabled." *See Loden v. Getty Oil Co.,* Del.Supr., 359 A.2d 161 (1976).

We find no merit to the contention of the personal representatives that simply because the deceased insured purchased no–fault coverage in excess of minimum requirements, recovery should be allowed for lost earnings on an actuarial lifetime basis.

For the reasons stated, we approve the Trial Court's ruling limiting decedents' estates' no–fault recovery of lost earnings to those sums which would have been earned or received by them during the two–year period from the date of the accident and not beyond.

Affirmed.