**CRUM & FORSTER INSURANCE GROUP, Defendant Below, Appellant,**

v.

**Charles WRIGHT, Plaintiff Below, Appellee.**

**AETNA CASUALTY & SURETY CO., Defendant Below, Appellant,**

v.

**Judith MILLER, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Oct. 29, 1993.
Decided: Dec. 22, 1993.

**374**

Roger D. Landon (argued) of Heckler & Cattie, Wilmington, for appellant Crum & Forster Ins. Group.

Donald L. Gouge, Jr. (argued) of Heiman, Aber & Goldlust, Wilmington, for appellant Aetna Cas. & Sur. Co.

Elwood T. Eveland, Jr. (argued), and Frederick S. Freibott of Woloshin, Tenenbaum & Natalie, P.A., Wilmington, for appellees.

Before HORSEY, MOORE, WALSH, and HOLLAND, JJ., and JACOBS, Vice Chancellor (sitting by designation pursuant to Del. Const. art. IV, § 12), constituting the Court *en Banc.*

HOLLAND, Justice:

This is an appeal following the entry of a final judgment by the Superior Court. The defendants-appellants are Crum & Forster Insurance Group ("Crum & Forster") and Aetna Casualty & Surety Co. ("Aetna"). The plaintiffs-appellees are Charles Wright ("Wright") and Judith Miller ("Miller").

Crum & Forster and Aetna contend that the Superior Court erred, as a matter of law, in granting motions for summary judgment by Wright and Miller. The Superior Court held that the injured employees' out-of-pocket payment for what had been employer-paid health insurance premiums was a compensable loss of "earnings," pursuant to 21 *Del.C.* § 2118 and the personal injury protection ("PIP") coverage provided by the automobile policies of Wright and Miller. We have concluded that the judgment of the Superior Court should be affirmed.

*Facts*

The parties have stipulated to the relevant facts. Wright and Miller are individuals who sustained personal injuries in automobile accidents which prevented them from working at their respective jobs for some period of time. Both Wright and Miller were provided with employer-paid health insurance prior to their automobile accidents as part of the terms of their employment.

Because Wright and Miller were out of work for a certain period of time, they were advised that their health insurance premiums would no longer be paid for by their employers. Wright and Miller were also both notified by their respective employers that, pur-

suant to COBRA,[1] if they wished to continue their health insurance coverage, they would have to pay the premiums themselves. Both Wright and Miller elected to continue such coverage and commenced payment of the premiums.

Wright and Miller were both eligible for certain benefits provided by the automobile insurance policies issued by Crum & Forster and Aetna, which included PIP benefits for loss of earnings as mandated by 21 *Del.C.* § 2118. Wright and Miller have made loss of earnings claims against their personal injury protection carriers, Crum & Forster (Wright) and Aetna (Miller), for reimbursement of amounts paid by each of them for their respective health insurance premiums. Both Crum & Forster and Aetna have denied the respective claims by Wright and Miller.

### Delaware No–Fault Statute
### The Parties' Contentions

■ The Delaware No–Fault insurance statute mandates coverage for lost earnings sustained by persons injured as a result of an automobile accident. *Bass v. Horizon Assurance Co.*, Del.Supr., 562 A.2d 1194, 1995 (1989). Specifically, it provides that:

(a) No owner of a motor vehicle registered in this State ... shall operate ... such vehicle unless the owner has insurance on such motor vehicle providing the following minimum insurance coverage:

\* \* \* \* \* \*

(2) a. Compensation to injured persons for reasonable and necessary expenses incurred within 2 years from the date of the accident for:

\* \* \* \* \* \*

2. Net amount of *lost earnings*. Lost earnings shall include net lost earnings of a self-employed person.

21 *Del.C.* § 2118 (emphasis added).

The PIP provisions of the insurance policies issued by Crum & Forster and Aetna comply with the mandate of 21 *Del.C.* § 2118, requiring such policies to provide compensation to persons injured in automobile accidents for reasonable and necessary expenses incurred within two years from the date of the accident, including "[n]et amount of lost earnings." 21 *Del.C.* § 2118(a)(2)a.2. The Crum & Forster policy purchased by Wright defines "loss of earnings" as follows:

Any amount actually lost, net of taxes on income which would have applied, by reason of inability to work and earn wages or salary or their equivalents that would otherwise have been earned in the normal course of an "injured person's" employment but not other income, but loss of earnings does not include any loss after the death of an "injured person."

Miller's Aetna policy defines "loss of earnings" as follows:

any amount actually lost, net of taxes on income which would have applied, by reason of inability to work and earn wages or salary or their equivalent (including net loss of earnings of a self-employed person) that would otherwise have been earned in the normal course of an injured person's employment but not other income. However, loss of earnings does not include any loss after the death of an injured person.

The sole issue presented in this case relates to the meaning of "[n]et amount of lost earnings" as that phrase is used in the statute. 21 *Del.C.* § 2118(a)(2)a.2. Crum & Forster and Aetna argue that the word "earnings" is synonymous with wages. Accordingly, Wright and Miller have been com-

---

1. COBRA stands for the federal Consolidated Omnibus Budget Reconciliation Act of 1985. Congress passed COBRA in 1986. Pub.L. No. 99–272, 1986 U.S.C.C.A.N. (100 Stat.) 82. The COBRA amendments to the Employee Retirement Income Social Security Act of 1974 (ERISA) were enacted in response to "reports of the growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay." H.R.Rep. No. 241, 99th Cong., 2d Sess., pt. 1, at 44 (1985), *reprinted in* 1986 U.S.C.C.A.N. 42, 579, 622. To help remedy this problem, Congress amended ERISA to require all plan sponsors of group health plans to provide continuation coverage under their plans. 29 U.S.C.A. § 1161(a). *See National Cos. Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc.*, 929 F.2d 1558, 1567 (11th Cir.1991).

pensated by Crum & Forster and Aetna for their net amount of lost wages. The Superior Court determined, however, that the statutory phrase "[n]et amount of lost earnings" also entitled Wright and Miller to reimbursement for their out-of-pocket payments of health insurance premiums in addition to their loss of wages.

In support of their position, Aetna and Crum & Forster argue that the Superior Court misconstrued this Court's decision in *State Farm Mutual Automobile Insurance Co. v. Nalbone,* Del.Supr., 569 A.2d 71 (1989). In particular, the insurance carriers allege that in *Nalbone,* this Court held that the word "earnings" in Section 2118 meant "wages." *See id.* at 75–76. Aetna and Crum & Forster's reliance upon *Nalbone* is misplaced. In *Nalbone,* the parties stipulated that the lost earnings at issue were "wages" or "take home" earnings. *Id.* at 72 n. 2.

### Statutory Construction
### "Net Amount of Lost Earnings"

The phrase "[n]et amount of lost earnings" is not defined by statute. This Court was first called upon to construe that phrase in *United States Fidelity and Guaranty Co. v. Neighbors,* Del.Supr., 421 A.2d 888 (1980). In doing so, this Court looked to the "objectives of Section 2118 and interpretive case law." *Id.* at 889. This Court undertook a similar examination of that phrase again, in part, in *Nalbone. See State Farm Mut. Auto. Ins. Co. v. Nalbone,* 569 A.2d at 72.

This Court recognized in *Nalbone* that although Section 2118(a)(2)a.2 mandates compensation for the net amount of lost earnings, the statute provides no definition as to what "earnings" are or when they are "lost." *Id.* We were cognizant, however, that in *Neighbors* this Court had identified the statutory objective of Section 2118 as being to enable persons who have been injured in automobile accidents to receive from their own insurance carriers "the economic benefit of immediate payment without awaiting protracted litigation." *United States Fidelity and Guar. Co. v. Neighbors,* 421 A.2d at 890 (quoting *DeVincentis v. Maryland Casualty Co.,* Del.Super., 325 A.2d 610, 612 (1974)). In *Nalbone,* this Court concluded that the statutory ob-jective of Section 2118 could best be accomplished if the phrase "[n]et amount of lost earnings" was defined by determining whether the injured employee had "suffered any out-of-pocket loss for which she [or he] has not received full compensation through a combination of employer benefits and PIP payments." *State Farm Mut. Auto. Ins. Co. v. Nalbone,* 569 A.2d at 75. Accordingly, we shall apply that same analysis in the case *sub judice.*

### This Case
### "Net Amount of Lost Earnings"

The undisputed record reflects that both Wright and Miller were provided with employer-paid health insurance prior to their automobile accidents as part of the terms of their employment. For a period of time after the accidents, their respective employers continued to pay Wright's and Miller's health insurance premiums. After the accidents, Aetna's and Crum & Forster's PIP coverage paid Wright and Miller for their lost wages. Therefore, pursuant to this Court's holding in *Nalbone,* neither Wright nor Miller had then "suffered any out-of-pocket loss for which [they] had not received full compensation through a combination of employer benefits and PIP payments." *See id.* 569 A.2d at 75. However, once the injured employees, Wright and Miller, themselves became obligated to pay health insurance premiums previously paid by their employers, they did sustain an out-of-pocket loss for which they did not receive "full compensation through a combination of employer benefits and PIP payments." *See id.*

We find that, in addition to our analysis in *Nalbone,* the rationale of the United States Supreme Court in a similar context is also instructive in resolving the issue of whether employer-paid health insurance premiums constitute "earnings." *United States v. Carter,* 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957). *Carter* concerned a claim under the Miller Act, which requires a federal contractor to post a surety bond that guarantees the payment of "sums justly due" to its employees. 40 U.S.C.A. §§ 270a.–270d. (1986). Because the employer had failed to make health

plan contributions, when an action was filed on the surety bond, the United States Supreme Court held that those "contributions were a part of the compensation for the work to be done by [the] employees," and therefore the unpaid contributions were "sums justly due" under the statute. *United States v. Carter*, 353 U.S. at 217–18, 77 S.Ct. at 797.

The United States Supreme Court in *Carter* did not base its holding on the premise that those contributions were included in wages. In fact, it specifically noted that the Miller Act "does not limit recovery on the statutory bond to 'wages.'" *Id.* at 217, 77 S.Ct. at 797. The United States Supreme Court held that "[f]or purposes of the Miller Act, [the employer's health plan] contributions are in substance as much 'justly due' to the employees who have *earned* them as are the wages payable directly to them in cash." *Id.* at 220, 77 S.Ct. at 798 (emphasis added). Accordingly, it held that "[i]f the employees are to be 'paid in full' the 'sums justly due' to them," they must receive their lost wages *and* the employer's health plan contributions. *Id.* Compare *Morris–Knudsen Constr. Co. v. Director, OWCP*, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983).[2]

Section 2118 mandates payment for lost earnings.' 21 *Del.C.* § 2118(a)(2)a.2. The phrase "[n]et amount of lost earnings" in Section 2118, like the statutory bond language in the Miller Act, is broader than the term "wages" and, *a fortiori*, is not synonymous with it. *Accord United States Fidelity and Guar. Co. v. Neighbors*, Del.Supr., 421 A.2d 888 (1980). Accordingly, the Superior Court correctly determined that the majority rationale in *Nalbone* permitted Wright and Miller to recover the COBRA cost of paying health insurance from their PIP carriers as part of their "lost earnings."

 The phrase "[n]et amount of lost earnings" in Section 2118 mandates PIP payments to an injured employee for the out-of-pocket expense incurred by the loss of em-

ployer-paid health insurance premiums. Wright and Miller were entitled to PIP payments for their out-of-pocket health insurance premiums because they had *earned* them as much as "the wages payable directly to them in cash." *United States v. Carter*, 353 U.S. at 220, 77 S.Ct. at 798. The employer-paid health insurance premium component of Wright's and Miller's *earnings* were *lost* when those health insurance premiums were no longer paid by their employers.[3] *See id.*

### Conclusion

The judgments of the Superior Court in favor of Wright and Miller are AFFIRMED.

---

**2.** In *Morris–Knudsen,* the United States Supreme Court held, conversely, that the narrow word "wages" in the Longshoremen's and Harbor Workers' Compensation Act did not include health insurance contributions. *Id.* at 637, 103 S.Ct. at 2052.

**3.** Our holding in this case is limited to the determination that employer-paid health insurance premiums contribute an integral component of "earnings."