John B. DEVANEY, Plaintiff Below, Appellant,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant Below, Appellee.

No. 302, 1995.

Supreme Court of Delaware.

Submitted: April 16, 1996.
Decided: July 10, 1996.

James J. Woods, Jr. of Connolly, Bove, Lodge & Hutz, Wilmington, for Appellant.

Paul M. Lukoff of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Appellee.

Before WALSH, HARTNETT and BERGER, JJ.

BERGER, Justice:

John B. Devaney ("Devaney") appeals from an adverse decision in his jury trial against Nationwide Mutual Insurance Company ("Nationwide"). Devaney sought compensatory and punitive damages, alleging that Nationwide acted in bad faith when it denied Devaney's personal injury protection claim. In this appeal, Devaney argues that the Superior Court erred in several of its evidentiary rulings. Most notably, he complains about the admission of testimony about the parties' arbitration and the exclusion of evidence that Nationwide finally paid Devaney's personal injury claims a few days before trial was scheduled to begin. Devaney also contends that the Superior Court erred in dismissing his claim for emotional distress and improperly instructed the jury on punitive damages.

We hold that an insurance commissioner arbitration pursuant to 21 *Del.C.* § 2118 should be treated the same, for evidentiary purposes, as an arbitration pursuant to Superior Court Civil Rule 16.1 and that the Superior Court should have excluded evidence relating to the insurance commissioner arbitration. Evidence of the timing of Nationwide's payment should have been admitted, as the parties had stipulated to its admissibility when Devaney accepted the tendered funds. Devaney's remaining evidentiary claims lack merit and we find no error with respect to the jury instructions on punitive damages. Finally, we hold that Devaney adequately stated a claim for emotional distress accompanied by physical injury. Accordingly, we affirm in part and reverse in part and remand for new trial.

## I. FACTUAL BACKGROUND

Devaney sustained injuries in an automobile accident on October 14, 1992. He was driving a van owned by his employer, Twaddell Plumbing and Heating ("Twaddell"), when a truck hit the van from behind. Deva-

ney was an "insured" under Twaddell's insurance policy, issued by Nationwide, which included $100,000 in personal injury protection ("PIP") coverage.

Devaney suffered severe soft tissue injuries, primarily in his lower back and legs. He was treated at St. Francis Hospital and after his discharge, Devaney received regular physical therapy and chiropractic adjustment. In December 1992, Devaney submitted a PIP application to Garna Durroh ("Durroh"), a Nationwide claims representative. During the first few months of 1993, Durroh received bills for medical services and prescription drugs, disability slips from Devaney's physicians, and verbal confirmation from Twaddell that Devaney had not returned to his former position as a plumber. In February 1993, Durroh authorized payment of Devaney's medical expenses and lost wages from the time of the accident to the payment date. She also arranged for Devaney to be examined by Dr. Joseph Irwin ("Irwin"), a chiropractic orthopedist.

On March 24, 1993, Irwin submitted a report of his medical findings and conclusions to Durroh. Irwin confirmed that Devaney was suffering from severe soft tissue injuries and that all of Devaney's continuing symptoms related to his October 1992 automobile accident. Irwin noted that, despite extensive physical therapy and chiropractic treatments, Devaney's condition had not improved significantly. As a result, Irwin concluded that the treatments then being provided to Devaney were not reasonable and necessary. Instead, Irwin recommended that Devaney be evaluated by a rheumatologist and that an electromyogram be taken of Devaney's legs. Irwin anticipated that appropriate treatment for Devaney would include injections in the inflamed muscle tissue. Irwin was unable to predict how long Devaney would remain disabled by his injuries.

Shortly after receiving Irwin's report, Durroh notified Devaney that Nationwide would not pay for physical therapy or chiropractic care after March 23, 1993. Durroh's notification made no mention of lost wage claims and Durroh conceded at trial that Irwin's report provided no basis for a denial of lost wages. However, Nationwide stopped paying Deva-

ney's lost wages after April 30, 1993. Durroh testified that the wage claims were denied because Twaddell failed to document the fact that Devaney had not returned to work. Unfortunately, no one from Nationwide ever advised Devaney or his counsel that Nationwide was awaiting documentation from Twaddell.

Devaney responded to Nationwide's denial of medical coverage by filing a request for an insurance commissioner arbitration pursuant to 21 *Del.C.* § 2118(j) (the "§ 2118 arbitration"). The arbitration panel conducted a hearing and issued a decision on June 21, 1993, finding in favor of Devaney with respect to his lost wages claim and in favor of Nationwide with respect to the medical claims. Devaney filed a *de novo* appeal in the Superior Court on July 21, 1993. The Superior Court complaint, as amended, included a claim for PIP benefits as well as allegations of bad faith and a claim for damages based on emotional distress.

The Superior Court action was submitted to arbitration pursuant to Superior Court Civil Rule 16.1 (the "Rule 16.1 arbitration") in May 1994. The arbitrator found that Devaney's medical expenses were reasonable and necessary and that Nationwide's refusal to pay Devaney's lost wages was an act of bad faith. The arbitrator awarded Devaney $43,186.12 together with interest.

Nationwide appealed the Rule 16.1 arbitration award and a trial *de novo* was scheduled in Superior Court for March 8, 1995. Less than a week before the scheduled trial date, when it appeared that the case would not be continued, Nationwide offered to pay approximately $47,000, which was the full amount of Devaney's outstanding PIP claims. Devaney accepted the offer on the condition that he would be allowed to tell the jury that Nationwide made the offer a few days before trial.

As it happened, the trial was continued and finally took place in July 1995. Shortly before trial, the Superior Court issued a bench ruling dismissing Devaney's emotional distress claim. After a two-day trial, limited to Devaney's bad faith claim, the jury found in favor of Nationwide.

## II. EVIDENTIARY RULINGS

Devaney argues that the Superior Court erred in admitting evidence concerning the § 2118 arbitration and in excluding (i) evidence concerning the timing of Nationwide's final PIP payment; (ii) deposition testimony from a different bad faith action against Nationwide; and (iii) various Nationwide financial statements. We review the trial court's decisions to admit or exclude evidence for abuse of discretion. If we conclude that there was error, we then must decide whether Devaney was significantly prejudiced and thereby denied a fair trial. *Firestone Tire and Rubber Co. v. Adams*, Del.Supr., 541 A.2d 567, 570 (1988).

### A. The § 2118 Arbitration

■ During the course of the trial, there were repeated references to the fact that Devaney had appealed the § 2118 arbitration decision. In his opening statement, counsel for Nationwide described the fact that Devaney filed a claim with the insurance commissioner's office; that a hearing was conducted to determine whether Nationwide's decision denying PIP benefits was correct; and that the arbitration panel "agreed with Nationwide that no medicals should be paid." Several witnesses also referred to the § 2118 arbitration during their testimony. Durroh stated that Nationwide would have paid Devaney's wage claims, in accordance with the § 2118 arbitration decision, if Devaney had not appealed from that decision. Durroh's supervisor, John Hayes, took over responsibility for the Devaney claim late in 1993. He testified that he did not pay any medical bills or wage claims for approximately one year because Devaney's claim was in litigation.

Counsel for Nationwide returned to the § 2118 arbitration results in his closing remarks. He explained that the people who serve as arbitrators are very experienced and "know when an insurance company isn't doing the right thing." Counsel again pointed out that the § 2118 panel agreed with

Nationwide on the medical claims, but that Devaney did not accept that decision. "They [Devaney's attorneys] filed a lawsuit against Nationwide. Nationwide didn't file the appeal, the lawsuit. His first attorney did."

Devaney argues that all references to the § 2118 arbitration, its result, and Devaney's appeal should have been excluded. Nationwide contends that the § 2118 arbitration evidence was relevant and admissible in the context of a bad faith claim. Nationwide was defending that claim by attempting to establish a reasonable justification for its decision not to pay Devaney's PIP benefits. One of Nationwide's reasons was the fact that the PIP claims were in litigation, first through the § 2118 arbitration proceedings and later when Devaney appealed the arbitrator's decision to the Superior Court.

The objective of § 2118, Delaware's no-fault insurance statute, is to "enable persons who have been injured in automobile accidents to receive from their own insurance carriers 'the economic benefit of immediate payment without awaiting protracted litigation.'" *Crum & Forster Ins. Group v. Wright*, Del.Supr., 634 A.2d 373, 376 (1993) (quoting *United States Fidelity and Guar. Co. v. Neighbors*, Del.Supr., 421 A.2d 888, 890 (1980)). Consistent with that objective, § 2118(j) establishes an arbitration procedure available to any party claiming entitlement to PIP benefits. The claimant's decision to seek arbitration is "purely optional" and neither party waives "any of its rights by any act relating to arbitration...." 21 *Del.C.* § 2118(j)(5).

The § 2118 arbitration is similar to the arbitration mandated by Superior Court Civil Rule 16.1. Both arbitrations provide a relatively speedy, inexpensive alternative to full-scale litigation. In addition, both arbitrations provide for a trial *de novo* in Superior Court. The rule creating the Superior Court arbitration expressly prohibits any reference to the arbitration in a *de novo* trial.[1] Although there is no similar provision in

---

1. Rule 16.1(h)(3) provides: "At the trial de novo the Court shall not admit evidence that there has been an arbitration proceeding, the nature or amount of the order, nor consider any other matter concerning the conduct or outcome of the arbitration proceeding, except that recorded testimony given at an arbitration hearing may be used in the same manner as testimony taken at a deposition in the trial de novo."

§ 2118, we conclude that the two arbitrations should be treated the same in *de novo* trials.

Generally, evidence of prior judicial determinations is withheld from the jury in later proceedings because it tends to be confusing, prejudicial and largely irrelevant. *See DeAngelis v. Harrison,* Del.Supr., 628 A.2d 77, 80 (1993). "The admission of a prior verdict creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it." *Coleman Motor Co. v. Chrysler Corp.,* 525 F.2d 1338, 1351 (3d Cir.1975). In the case of an arbitration, there is the added risk that the arbitration decision was more in the nature of an attempted compromise than a finding of fact. Allowing the jury to know the results of an arbitration under those circumstances would be misleading and highly prejudicial.

■ Even where, as here, the fact that there was a § 2118 arbitration would be relevant to explain Nationwide's failure to pay, that evidence is inadmissible. There is a strong public policy in favor of alternative dispute resolution, including the § 2118 arbitration. *See Graham v. State Farm Mut. Auto. Ins. Co.,* Del.Supr., 565 A.2d 908, 911 (1989). That policy would be defeated, and insureds would avoid the § 2118 arbitration, if the decision to arbitrate or the conduct of the arbitration proceeding were allowed to be used against the insured in a subsequent trial. Accordingly, we conclude that Superior Court Civil Rule 16.1(h)(3) should govern the admissibility of evidence relating to a § 2118 arbitration.

■ Having found that the § 2118 arbitration evidence was improperly admitted, the question remains whether Devaney was significantly prejudiced by that error. We find that he was. The jury was told that Devaney lost the § 2118 arbitration (on the issue of medical payments) and that he appealed. From these facts, the jury could have concluded that Devaney was the unreasonable party and that his claims lacked merit. The jury never heard that the Superior Court arbitrator found in Devaney's favor and also found that Nationwide had acted in bad faith. As a result, the jury's understanding of the prior proceedings was highly distorted, and Devaney was denied a fair trial.

**B. The Timing of Nationwide's Payment**

■ Nationwide refused to pay any of Devaney's PIP claims for a period of almost two years. In March 1995, right before Devaney's trial was scheduled to begin, Nationwide offered to pay Devaney the full amount of his PIP claims with interest. Devaney accepted the offer on the condition that he would be allowed to tell the jury that Nationwide's offer of payment came only a few days before trial. This condition of acceptance was documented in correspondence between the parties' counsel. Nonetheless, at trial Nationwide objected to the introduction of evidence as to the timing of its PIP payment.

Devaney advised the court that the parties had stipulated to the admissibility of the evidence, and counsel for Nationwide acknowledged the prior agreement, but said that it was a mistake on his part. The trial court excluded the evidence pursuant to D.R.E. 403, based on its finding that the jury might be confused or misled. The trial court made no finding that the parties' agreement was void or unenforceable, yet its ruling abrogated a material provision of their contract.[2] We find that the trial court abused its discretion in failing to give effect to the parties' stipulation.

This error, combined with the erroneous admission of evidence relating to the § 2118 arbitration, had a significant prejudicial effect on Devaney's claim. The thrust of his bad faith claim was that Nationwide had no interest in resolving the PIP claims until the trial was a few days away and its "feet were held to the fire." The timing of Nationwide's offer of payment strongly supports Deva-

---

**2.** Nationwide suggests in its brief, as it did in the court below, that its trial counsel was not aware of prior correspondence in Nationwide's file when he made the agreement with Devaney and that the agreement was a mistake. Trial counsel's lack of full knowledge, however, does not justify rescission of the parties' partially executed contract. *See Matter of ENSTAR Corp.,* Del. Supr., 604 A.2d 404, 411 (1992) (Four conditions, none of which are present here, must be satisfied to warrant rescission on the basis of unilateral mistake.)

ney's theory and casts serious doubt on Nationwide's claimed justification for withholding PIP benefits. This evidence would have been an important piece of information for the jury to evaluate and its erroneous exclusion mandates a new trial.

## C. The Deposition Testimony from a Separate Action against Nationwide

■ Evidence was presented at trial that Durroh, a claims representative, was authorized to deny PIP benefits without having her decision reviewed or approved by any superiors. In 1988, Nationwide's claims representatives apparently could not deny PIP benefits on their own. Devaney attempted to establish Nationwide's prior policy through the introduction of deposition transcripts from an earlier federal court action. The trial court excluded the evidence, ruling that it was irrelevant both because of the lapse of time and the tenuous connection between a bad faith claim and Nationwide's prior supervision policy.

We find that the trial court acted well within its discretion in excluding this evidence. Devaney's only purpose in attempting to introduce the depositions was to show that Nationwide's claims review process was not as careful as it might have been. That point was made through evidence of the number of cases Durroh was handling at one time, her limited experience, and the fact that no one reviewed her decision. The additional evidence of a prior supervision policy would have added little, if anything, to Devaney's case and would have precipitated additional, unrelated testimony about Nationwide's supervision practices in 1988 and the reasons for, and timing of, any changes in those practices over the next five years.

## D. Nationwide's Financial Statements

In connection with his claim for punitive damages, Devaney attempted to introduce excerpts from Nationwide's 1992 through 1994 financial statements. Devaney did not intend to call a witness to explain or interpret those financial statements. Instead he intended to argue that Nationwide's net worth could be derived by simply reading the financial statement extracts and subtracting

the company's liabilities from its assets. Nationwide argued that, because it is a mutual company, its surplus cannot be equated with net worth. Without anyone testifying as to the meaning of the financial statements, Nationwide argued that they would be confusing and potentially misleading. In addition, Nationwide suggested that any issues with respect to its net worth could be resolved after a verdict, if the jury were to award punitive damages in an amount that bore no relationship to any compensatory damages. The trial court accepted Nationwide's argument in both respects and we find no abuse of discretion in this ruling.

## III. JURY INSTRUCTIONS ON PUNITIVE DAMAGES

■ Devaney argues that the Superior Court erred in instructing the jury on punitive damages because it included references to evil, ill will and malicious conduct. "The test for determining the appropriateness of jury instructions is well settled: 'A trial court's instructions will not be the basis for reversible error if they [correctly state the law and] are reasonably informative and not misleading, judged by common practices and standards of verbal communication.'" *Sirmans v. Penn,* Del.Supr., 588 A.2d 1103, 1104 (1991) (quoting *Haas v. United Technologies Corp.,* Del.Supr., 450 A.2d 1173, 1179 (1982)). "Jury instructions do not need to be perfect," *Dawson v. State,* Del.Supr., 581 A.2d 1078, 1105 (1990), and no one statement may be viewed in a vacuum. "The entire charge must be read as a whole." *Probst v. State,* Del.Supr., 547 A.2d 114, 119 (1988).

Devaney objects to the trial court's repeated references to "evil," "hatred," and "ill will" during the instructions on punitive damages. He argues that his claim was not based on any such motives. Devaney attempted to prove only that Nationwide acted outrageously or recklessly, and the trial court's inclusion of other possible bases for the award of punitive damages misled or confused the jury.

The relevant portions of the jury instructions were:

[I]f an insurer's breach of contract is particularly egregious and rises to the level of willful, wanton or malicious conduct, punitive damages may be awarded. If Mr. Devaney's contention is that Nationwide's conduct was unintentional, punitive damages can only be allowed in a situation where the conduct has been outrageous or particularly reprehensible.

... Mr. Devaney bears the burden of proving ill will or hatred or intent to cause injury or reckless indifference to the plight of the insured, that is, himself, before he is entitled to receive punitive damages. Mr. Devaney has the burden of proving only one of these elements.

Therefore, if you find that Mr. Devaney carried his burden of proving ... that Nationwide's [conduct] amounted to a willful, evil or, if malicious, particularly reprehensible, conduct ... Mr. Devaney may be entitled to an award of punitive damages. However, if you find ... that Nationwide's [conduct] did not rise to the level of evil or malicious conduct, you may not award punitive damages.

Those instructions correctly stated the law governing the award of punitive damages. *See Tackett v. State Farm Fire & Cas. Ins.,* Del.Supr., 653 A.2d 254, 265–66 (1995). The jury was clearly told that it could award punitive damages based on a finding of outrageous or reckless conduct without finding that Nationwide harbored any evil motives or ill will toward Devaney. Accordingly, we find Devaney's argument to be without merit.

## IV. THE EMOTIONAL DISTRESS CLAIM

■ Finally, Devaney argues that the trial court erred in dismissing his claim for emotional distress. The trial court ruled, in essence, that Devaney had not suffered any physical injury as a result of Nationwide's alleged bad faith and that the claim was precluded under *Tackett v. State Farm Fire*

*& Cas. Ins., supra.* We review that decision *de novo. Precision Air, Inc. V. Standard Chlorine of Delaware, Inc.,* Del.Supr., 654 A.2d 403, 406 (1995).

In *Tackett,* this Court reviewed emotional distress claims arising from an insurer's bad faith. The Court held that a claim against an insurer for bad faith sounds in contract law and that recovery is available for "all damages that arise naturally from the breach or that were reasonably foreseeable at the time the contract was made." *Tackett v. State Farm Fire & Cas. Ins.,* 653 A.2d at 265. The emotional distress claim was denied in *Tackett,* because there was no accompanying physical injury. However, the *Tackett* Court reaffirmed its prior holdings recognizing such claims where a physical injury is alleged. *See Mergenthaler v. Asbestos Corp. Of America,* Del.Supr., 480 A.2d 647, 651 (1984).

Devaney claimed that one of the injuries he suffered in the accident was testicular pain. He was treated with epidural blocks at Riverside Hospital in 1993 and the treatments relieved the pain. However, Nationwide refused to pay for those treatments. As a result, Riverside Hospital refused to provide a second round of treatments to Devaney in 1994, when the pain returned.

This series of events supports a claim of emotional distress accompanied by physical injury. Although the testicular pain was a problem arising from the car accident, the continued pain that Devaney was forced to suffer was caused by Nationwide's failure to pay for treatments that would have alleviated the pain. Thus, Devaney should have been allowed to present evidence of, and seek damages for, emotional distress arising from Nationwide's alleged bad faith refusal to pay Devaney's PIP claims.

## V. CONCLUSION

In summary, we find that the trial court erred in admitting evidence relating to the § 2118 arbitration and in excluding evidence as to the timing of Nationwide's PIP pay-

ment. In addition, Devaney should have been allowed to pursue his claim for emotional distress, as it was accompanied by physical injury. Based on these errors, we RE-VERSE and REMAND for a new trial. De-vaney's remaining claims are without merit, and, as to those claims, we AFFIRM.