**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,**
Defendant Below, Appellant,

v.

**John FISHER, Plaintiff Below, Appellee.**

No. 190, 1996.

Supreme Court of Delaware.

Submitted: Jan. 7, 1997.
Decided: April 10, 1997.

William J. Cattie, III (argued), and Barbara A. Fruehauf of Heckler & Cattie, Wilmington, for Appellant.

Richard A. Zappa of Young, Conaway, Stargatt & Taylor, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en Banc.

VEASEY, Chief Justice:

In this appeal, we hold that an individual must be either within a reasonable geographic perimeter of an insured vehicle or engaged in a task related to the operation of the vehicle at the time injuries are sustained in order to qualify as an "occupant" of that vehicle for purposes of Personal Injury Protection ("PIP") and Uninsured Motorist/Underinsured Motorist ("UM/UIM") insurance. Therefore, a police officer, who was responding to a complaint about a suspicious vehicle and who sustained serious injuries when he was struck by that vehicle while standing between 10 and 25 feet away from his insured patrol car, was: (a) too far away from his patrol car at the time he sustained his injuries to satisfy the reasonable geographic perimeter prong of the occupancy test; and (b) not engaged in a task related to the operation of his patrol car when he was struck by the suspicious vehicle, thus failing to satisfy that prong of the test.

We recognize that an officer who is injured while acting within the scope of his official duties is entitled to recover damages, and that an insurer under an appropriate insurance contract may be required to respond. Nevertheless, to allow recovery on this insurance contract under these facts and the rationale that this officer was an "occupant" of his vehicle would be an unwarranted and overbroad reading of that term, even employing the principle of liberal construction. Accordingly, we reverse the decision of the Superior Court granting summary judgment to the police officer.

### Facts

On December 7, 1993 plaintiff below-appellee, officer John Fisher and fellow officer David Kastner, patrolmen with the New Castle County Police, were dispatched to investigate a suspicious vehicle parked in the parking lot of an apartment complex. Officers Fisher and Kastner arrived at the scene and parked their patrol cars directly behind a row of parked cars in a manner that would allow immediate access to the patrol cars. The officers left the car motors running but locked the car doors. To obtain a description of the suspicious vehicle, the officers walked over to the nearby apartment complex and spoke to Martin Spencer, the resident who earlier had called in the complaint. Mr. Spencer directed the officers to a blue Mazda which happened to be parked directly across from where the patrol cars were parked. When they parked their cars, Officers Fisher and Kastner did not know which was the suspicious vehicle.

Officer Fisher approached the Mazda on the driver's side with Officer Kastner on the passenger's side. The windows were tinted, making it difficult to see inside the vehicle. Officer Fisher thought he saw someone sleeping inside, so he tapped on the driver's side window. The occupant sat up and started the car, backing it out of its parking space. Officer Fisher testified that he start-

ed to move toward his patrol car, but that the Mazda moved toward him, forcing him to walk backward to avoid being hit by the Mazda. Officer Fisher further testified that he placed his hands on the hood of the Mazda and yelled for the driver to stop the car. The Mazda did not stop and it ran over Officer Fisher, severely injuring him. Officer Fisher was between 10 and 25 feet away from his patrol car when the Mazda first struck him. The Mazda was a stolen car, and the driver was uninsured at the time of the accident.

Officer Fisher applied for UM/UIM motor vehicle benefits in the amount of one million dollars and $300,000 in PIP benefits under a Business Automobile insurance policy issued by defendant below-appellant, National Union Fire Insurance Company of Pittsburgh ("National Union") covering the New Castle County patrol vehicle. National Union denied coverage on the ground that Officer Fisher was not an insured under the policy because he was not occupying the covered vehicle at the time of the accident.

Officer Fisher sued National Union in the Superior Court, seeking to recover for his injuries based on the coverage in the amounts applied for under the policy. The Superior Court granted summary judgment for Officer Fisher, concluding that he was an occupant of the patrol car at the time of the accident. National Union appeals.

### Scope and Standard of Review

■ The Superior Court's interpretation of an insurance policy is a matter of law.[1] Hence, this Court reviews that decision *de novo*. Since the Superior Court made its ruling on a motion for summary judgment, this Court must consider all facts in the light most favorable to the non-moving party and draw its own conclusions with respect to those facts.[2]

### The Role of No–Fault and Uninsured Motorist Insurance

■ We begin with a recognition of the different roles played by automobile insurance and workers' compensation insurance. Recovery for the injured party should be based not upon whether there should be compensation at all, but should be based upon the type of coverage for which the insured has contracted. It is important in this analysis to be aware of the potential for unlimited expansion of the definition of the word "occupant" beyond that which was foreseeable by the General Assembly or by the contracting parties to automobile insurance contracts. The sphere of injuries contemplated for coverage under the workers' compensation insurance scheme should not be usurped by an overbroad interpretation of automobile insurance coverage.[3]

The State of Delaware requires automobile owners to carry minimum liability and PIP insurance and further requires that liability insurance policies offer coverage for damage and personal injury caused by uninsured or underinsured vehicles.[4]

■ The legislative intent of Delaware's no-fault statute found in 21 *Del.C.* § 2118 is "to impose on the no-fault carrier ... not only primary but ultimate liability for the [injured party's] covered medical bills to the extent of [the carrier's] unexpended PIP benefits."[5] The purpose of section 2118 is to allow persons injured in automobile accidents to receive from their own carriers "'the economic benefit of immediate payment without

1. *Universal Underwriters Ins. Co. v. The Travelers Ins. Co.*, Del.Supr., 669 A.2d 45, 47 (1995).

2. *Gilbert v. El Paso Co.*, Del.Supr., 575 A.2d 1131, 1142 (1990); *Williams v. Geier*, Del.Supr., 671 A.2d 1368, 1375–76 (1996).

3. *See, e.g., Krupenny v. West Bend Mutual Ins. Co.*, Minn.Supr., 310 N.W.2d 133 (1981) (holding sanitation worker not entitled to no-fault automobile insurance benefits but entitled to work-

ers' compensation benefits where worker injured while picking up and unloading dumpsters with a garbage truck).

4. These minimum requirements are found in several portions of the Delaware Code including 21 *Del.C.* §§ 2118 and 2902 and 18 *Del.C.* § 3902.

5. *International Underwriters, Inc. v. Blue Cross & Blue Shield of Del., Inc.*, Del.Supr., 449 A.2d 197, 200 (1982).

awaiting protracted litigation.' " [6] Protection against injuries and damages caused by uninsured motorists is an area widely regulated by statute. The purpose of 18 *Del.C.* § 3902 is to protect innocent parties injured by the negligence of unknown tortfeasors or from those who have no means for compensating the injured persons.[7]

### *Definition of Occupant*

■ The parties agree that Officer Fisher would have been covered by the PIP and UM/UIM endorsements of National Union's policy if he had been "occupying" his patrol car at the time of the accident. For purposes of PIP coverage, this Court has adopted and continues here to uphold a liberal construction of the term "occupant." [8] Nevertheless, we undertake here to clarify and restate the two-prong test to determine occupancy. The liberal construction applicable to UM/UIM policies extends to cases where, as here, the language of the policy defines the term "occupying" to mean "in, upon, getting in, on, out or off." [9] Under the liberal definition, a person is considered an occupant of the covered vehicle if he or she is either: (a) within a reasonable geographic perimeter of the vehicle or (b) engaged in a task related to the *operation* of the vehicle.[10] Thus, the two prongs of the test are stated in the disjunctive.

■ The public policy behind Delaware's automobile insurance scheme is designed to provide significant protection to the injured insured regardless of fault or lack of insurance coverage of the tortfeasor. The disjunctive test fulfills that policy because the claimant need satisfy only one prong of the test to qualify for coverage as an "occupant" of an insured vehicle.

Even liberal construction has its limits, however. In a succession of cases spanning a period of over ten years, the courts of this state have endeavored to define those limits in a variety of fact situations.

In 1996, this Court held in *Selective Insurance Co. v. Lyons* that a man injured when struck from behind by a second vehicle while he was pumping gasoline into his insured vehicle was an occupant of his insured vehicle for purposes of PIP insurance. In that case, he happened to satisfy both prongs of the test.[11] A number of Superior Court cases should be analyzed in this context, although they have not been approved or disapproved on their facts by this Court.

The Superior Court held in *Oggenfuss v. Big Valley Associates* [12] that the injured plaintiff was not an occupant when she slipped and fell very close to her car after finishing a transaction at an automatic teller machine and while walking back to her car. Despite her close proximity to the insured vehicle at the time of her injury, the Superior Court denied coverage, finding the nexus between the vehicle and plaintiff's activity insufficient for her to be deemed an occupant. In two other cases, the Superior Court also found insufficient nexus between the plaintiffs' injuries and their covered vehicles, again denying coverage in two slip and fall cases where plaintiffs were injured very close to their insured vehicles while walking between their vehicles, a store and a diner.[13]

---

6. *Crum & Forster Ins. Group v. Wright,* Del.Supr., 634 A.2d 373, 376 (1993) (quoting *United States Fidelity and Guar. Co. v. Neighbors,* Del.Supr., 421 A.2d 888, 890 (1980)).

7. *State Farm Mut. Auto. Ins. Co. v. Abramowicz,* Del.Supr., 386 A.2d 670, 671–72 (1978).

8. *Selective Ins. Co. v. Lyons and Allstate Ins. Co.,* Del.Supr., 681 A.2d 1021, 1026 (1996).

9. *See, e.g., Thomas v. Nationwide Ins. Co.,* Del.Super., C.A. No. 82C–NO–109, slip op. at 4, Poppiti, J. (Feb. 8, 1984).

10. *Selective v. Lyons,* 681 A.2d at 1025.

11. *Id.* at 1026.

12. *Oggenfuss v. Big Valley Associates et al.,* Del.Super., C.A. No. 95C–02–197–SCD, 1996 WL 453319, 1996 Del.Super. LEXIS 234 (May 3, 1996).

13. *Carter v. Nationwide Ins. Co.,* Del.Super., C.A. No. 92C–01–016, 1992 WL 240479, 1992 Del.Super. LEXIS 380, at *8 (Aug. 26, 1992) ("Neither the contracting parties nor the General Assembly contemplated coverage to extend to persons outside a vehicle heading to a store to buy cigarettes."); *Adamkiewicz v. Milford Diner, Inc.,* Del.Super., C.A. No. 90C–JA–23, 1991 WL 35709, 1991 Del.Super. LEXIS 64, at *4 (Feb. 13, 1991) ("there must be a rational basis for drawing the parameter of the reach of the coverage.... How could anyone rationally conclude

In two additional cases, the Superior Court saw no need to employ a nexus analysis because there was a clear connection between the covered vehicle and the injuries sustained by the plaintiff. For example, the Superior Court found a state trooper to be an occupant of his patrol car under the reasonable geographic perimeter prong of the test when the state trooper was pinned between his patrol car and the car he had pulled over minutes before.[14] The Superior Court also held a plaintiff to be an occupant under both prongs of the test where plaintiff was injured when he slipped and fell on ice while walking around a trailer loaded with new cars after checking to ensure that the loaded cars were tightly secured.[15]

In *Messick v. Reliance Insurance Company*, the Superior Court conferred occupancy status upon a tow truck operator who was struck by a car while he was sweeping debris out of the roadway 61 feet away from his tow truck. The Superior Court found that he was both within a reasonable geographic perimeter of his truck and engaged in a task related to the operation of the truck when he was injured.[16] In that case the Court stated that 61 feet may not be a reasonable distance under other circumstances, but the specific nature of the tow truck operator's duties in this case made an otherwise lengthy distance reasonable. The Superior Court further stated that the act of sweeping debris left by the very accident to which he was dispatched was "inextricably related to the operation of the tow truck...."[17]

We adhere to our recent holding in *Selective Insurance Co. v. Lyons*, and we take this opportunity to explicate the rationale for applying the term "occupy" and its derivatives in the case before us and in future cases. We need not revisit each of the Superior Court cases discussed above to decide wheth-er or not each case is consistent with our holding herein.

The rationale to be applied to the term "occupy" involves an understanding that each component (reasonable geographic perimeter or task related to the operation of the vehicle) is discrete and must be analyzed separately. We now turn to this analysis.

### Reasonable Geographic Perimeter

■ We hold that, to qualify for occupancy status under the reasonable geographic perimeter prong of the test, the claimant must be in, entering, exiting, touching or within reach of the covered vehicle.[18] Nevertheless, a claimant who does not satisfy this prong may look to the second prong of the test for coverage. The geographic perimeter test should be a clear, bright-line test (absent further legislative or contractual exposition) and should not involve a nexus component. To do so would confuse that test with the second prong of the occupancy test, which is a nexus test.

■ Turning to the facts of the case before us, the parties agree that Officer Fisher was between 10 and 25 feet from his patrol car when he was struck by the blue Mazda. Under the reasonable geographic perimeter prong of the test, Officer Fisher fails this prong because he was not in, entering, exiting, touching or within reach of the patrol car when he was injured.

### Task Related to the Operation of the Vehicle

■ We now address the question of whether Officer Fisher was engaged in a task related to the operation of his patrol car when he was injured. We carefully distinguish between job-related tasks for which

walking toward one's car with an intent to enter it constitutes 'occupying the vehicle'?").

**14.** *Sczubelek v. Maahs*, Del.Super., C.A. No. 84C–FE–31, 1986 WL 15440, slip op., Balick, J. (Dec. 12, 1986).

**15.** *Walker v. M & G Convoy, Inc.*, Del.Super., C.A. No. 88C–DE–191, 1989 WL 158511, 1989 Del.Super. LEXIS 496 (Nov. 2, 1989).

**16.** *Messick v. Reliance Ins. Co.*, Del.Super., C.A. No. 94C–07–188, 1995 WL 465181, 1995 Del.Super. LEXIS 299 (July 26, 1995).

**17.** *Id.* at * 3, 1995 Del.Super. LEXIS at * 11.

**18.** We find that being "within reach of" a covered vehicle is tantamount to "touching" the vehicle because a person within touching distance has as much control over the automobile as the person actually touching it.

one's vehicle is an integral tool and tasks directly related to the *operation* of one's vehicle. Job-related tasks for which one's vehicle is an integral tool might include, for example: a delivery truck driver handing a package to a customer at his front door, a tow truck operator sweeping debris from a roadway, or an ambulance driver administering aid to a person on the roadside. The plaintiffs in these examples may not necessarily be engaged in tasks related to the operation of their vehicles for purposes of automobile insurance coverage. Rather, coverage under these scenarios more appropriately should be provided through other insurance, such as workers' compensation insurance.

Tasks related to the operation of the vehicle, by contrast, fall squarely within the definition of occupancy under the task-related prong of the test adopted by this Court. This prong could include such tasks as pumping gas, checking the fasteners on a loaded trailer, changing a tire or jump-starting an engine.

At the time of his injuries, Officer Fisher was not engaged in a task related to the operation of his vehicle. He was not using his patrol car for communication, for apprehension, detention or transportation of suspects, for protection from small arms fire, or for chasing the suspicious vehicle. While we agree that Officer Fisher's patrol car was an integral tool used during the performance of his duties as a police officer, this is not the test for occupancy. The scope of a person's duties and a task related to the operation of one's vehicle are not necessarily co-extensive. Accordingly, we find that Officer Fisher does not satisfy the second prong of the occupancy test.

### Conclusion

Officer Fisher's injuries are both serious and regrettable. They should be compensable under other theories or other insurance contracts. We are compelled, however, to find that Officer Fisher was not an occupant under the liberal definition of that term adopted and refined by this Court for purposes of PIP or UM/UIM coverage. Neither the public policy undergirding the automobile insurance scheme in Delaware nor the interests of consistency and predictability in this area of the law are served by the opposite result.

We realize that application of this holding to prior Superior Court cases could have caused different results to have been obtained in one or more of those cases. As noted above, we need not discuss the precise impact of this holding on each of those cases. To the extent the analysis in any of those cases is inconsistent with the holding announced herein, we decline to approve such case or cases.

Accordingly, we reverse the decision of the Superior Court and remand the case for entry of judgment consistent with this Opinion.