IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., | § § § | No. 315, 2014 |
| Defendant-Below, Appellant, | § § § § | Court Below: Superior Court of the State of Delaware |
| v. | § § | in and for New Castle County C.A. No. N10C-08-246 WCC |
| MATTHEW KELTY, | § § | |
| Plaintiff-Below, Appellee. | § § § | |

Submitted:     September 30, 2015
Decided:       October 20, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en banc*.

Upon appeal from the Superior Court.  **REVERSED**.

Colin M. Shalk, Esquire (*Argued*), Rachel D. Allen, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, for Appellant.

Gary S. Nitsche, Esquire (*Argued*), Kiadii S. Harmon, Esquire, Weik, Nitsche, Dougherty & Galbraith, Wilmington, Delaware, for Appellee.

**STRINE**, Chief Justice:

# I.    INTRODUCTION

In 2013, this Court determined that Matthew Kelty was eligible for personal injury protection ("PIP") benefits under an insurance policy between State Farm Mutual Automobile Insurance Company ("State Farm") and John and Shirley Lovegrove after Kelty was injured in an accident involving the Lovegroves' vehicle.[1]  As a result, this Court reversed the Superior Court's earlier grant of summary judgment to State Farm and remanded the case for further proceedings.  On remand, the parties argued about whether Kelty was entitled to receive only the statutory minimum of $15,000,[2] or $100,000, including excess coverage the Lovegroves opted to pay for but which was expressly limited in the policy to the insureds and their relatives who lived with them.  The Superior Court held that Kelty was entitled to receive the full $100,000 because the policy's limitation on who could benefit from the excess coverage was "void as against public policy."[3]

Because the plain language of the statute, 21 *Del. C.* § 2118, requires PIP policies to provide only $15,000 of coverage, the Superior Court erred by imposing a higher minimum here simply because the Lovegroves chose to pay for additional coverage for themselves and their relatives.  Doing so thwarts Delaware's public policy to encourage drivers to purchase more than the statutorily-mandated minimum by increasing the cost

---

[1] *Kelty v. State Farm Mut. Auto. Ins. Co.*, 73 A.3d 926 (Del. 2013).
[2] *See* 21 *Del. C.* § 2118(a)(2)b ("The minimum insurance coverage which will satisfy the requirements of subparagraph a. of this paragraph is a minimum limit for the total of all payments which must be made pursuant to that subparagraph of $15,000 for any 1 person and $30,000 for all persons injured in any 1 accident.").
[3] *Kelty v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 3057887, at *4 (Del. Super. May 28, 2014).

of excess coverage. Further, although Delaware's public policy, as reflected in the statutory scheme, supports the idea that every driver must obtain a certain amount of automobile insurance to cover anyone she might injure in a car accident, the General Assembly has simultaneously set the amount of that coverage at the level it deems appropriate. It is not the role of the judiciary to alter that amount and thus disrupt the incentives that the General Assembly has itself set up for insurers and consumers. Accordingly, we reverse the judgment of the Superior Court.

## II. BACKGROUND

Because the facts are not in dispute and have been discussed in previous opinions by this Court[4] and the Superior Court,[5] we need not recite them in detail. On August 3, 2008, Kelty was helping his mother-in-law, Shirley Lovegrove, and her husband, John Lovegrove, trim tree branches on their property. Before Kelty, who was standing in the tree, cleared a branch, he would fasten it to a rope attached to the Lovegroves' truck. John would then accelerate to keep the cleared branch from striking nearby power lines. But when John accelerated too rapidly after getting into an argument with Shirley, the rope broke, knocking Kelty out of the tree and causing injuries to his foot.

Kelty sued John, who at the time of the accident held an automobile insurance policy with State Farm. State Farm settled with Kelty under the Lovegroves' bodily injury liability coverage, but refused to provide PIP coverage, alleging that Kelty's injury did not meet the applicable requirements under 21 *Del. C.* § 2118. Kelty then sued State

---

[4] *See Kelty*, 73 A.3d 926.
[5] *See Kelty*, 2014 WL 3057887; *Kelty v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 1413966 (Del. Super. Feb. 21, 2012).

Farm in the Superior Court, which granted summary judgment to State Farm after finding that the Lovegroves' vehicle was not being "used for transportation purposes" at the time of the accident, as required under then-existing precedent.[6]   On appeal, this Court determined that the proper test for PIP coverage did not include such a requirement, overruling previous Supreme Court case law to the contrary.  As a result, this Court reversed the Superior Court's judgment and remanded the case for further proceedings.[7]

On remand, the Superior Court asked the parties to submit informal briefing to determine the amount of PIP coverage Kelty was entitled to under the Lovegroves' policy.  The policy provided for excess PIP coverage of up to $100,000, but with a limitation: "There is no coverage: . . . in excess of the minimum limits required by law for any pedestrian. *This does not apply to you, your spouse or any relative*."[8]  The policy defined "relative" as "a person related to you or your spouse by blood, marriage or adoption who lives primarily with you."[9]

Kelty argued that he was entitled to the full $100,000 because the limitation constituted an exclusion that was void as against public policy.  Alternatively, he contended that the limitation was inapplicable because he is a relative of the Lovegroves. State Farm countered that Kelty was entitled only to the statutory minimum of $15,000 because the provision is valid under Delaware law, and Kelty did not meet the definition of a relative under the policy because he did not live with the Lovegroves.

---

[6] *Kelty*, 2012 WL 1413966.
[7] *See Kelty*, 73 A.3d at 932–34 (overruling *Sanchez v. Am. Indep. Ins. Co.*, 2005 WL 2662960 (Del. Oct. 17, 2005)).
[8] App. to Opening Br. at 19 (State Farm Insurance Policy).
[9] *Id.* at 15.

3

In a Memorandum Opinion issued on May 28, 2014, the Superior Court found that the policy limitation constituted an exclusion that was void as against Delaware public policy. After reviewing the goals of the statute and this Court's relevant precedent, the Superior Court set out a bright-line rule: "when a policy provision attempts to exclude coverage beyond the statutorily-mandated minimum based on the claimant's relationship to the insured, those provisions will be held invalid under this State's public policy."[10] The Superior Court did not address whether Kelty was a relative of the Lovegroves for the purpose of coverage, and Kelty concedes on appeal that he does not meet the definition articulated in the policy.

On appeal, State Farm claims that the Superior Court erred by finding the provision invalid because it is not inconsistent with Delaware law or with public policy. Kelty responds that the Superior Court's analysis was correct. Alternatively, he contends for the first time that he was an occupant of the vehicle, not a pedestrian, so the relevant policy provision is inapplicable.

### III.   ANALYSIS

We review a trial court's determination of issues of law, including its interpretation of a statute, *de novo*.[11] Our analysis begins with the language of the statute: "Where a statute contains unambiguous language that clearly reflects the intent of the

---

[10] *Kelty*, 2014 WL 3057887, at *3.

[11] *Sussex Cnty. Dept. of Elections v. Sussex Cty. Republican Comm.*, 58 A.3d 418, 421 (Del. 2013).

4

legislature, then the language of the statute controls."[12] We also "'read each [relevant] section [of the statute] in light of all the others to produce a harmonious whole.'"[13] "If we determine that a statute is ambiguous, we will resort to other sources, including relevant public policy, to determine the statute's purpose."[14]

In finding that the limitation in the Lovegroves' policy with State Farm violated public policy, the Superior Court opined that "[t]he litigation around Delaware's PIP statute and the companion Delaware Financial Responsibility Law has been unfortunately all too frequent and, frankly, decisions related thereto have made it difficult to always find clear and unequivocal guidance for insurers and insurance companies."[15] We agree, and empathize with the difficult situation that the trial judge faced as our case law in this area is less than ideally clear. Nevertheless, any "clear and unequivocal guidance" must start with the words of the statute itself. In this case, the unambiguous language of the statute requiring only $15,000 of minimum coverage compels us to uphold the policy limitation at issue.

Moreover, even if the statutory text could be read as ambiguous, the underlying public policy reflected in the statute provides additional reason to uphold the provision at

---

[12] *Hoover v. State*, 958 A.2d 816, 820 (Del. 2008) (citing *Sandt v. Del. Solid Waste Auth.*, 640 A.2d 1030, 1032 (Del. 1994)).

[13] *Progressive N. Ins. Co. v. Mohr*, 47 A.3d 492, 496 (Del. 2012) (citing *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011)).

[14] *Kelty*, 73 A.3d at 929 (internal quotation marks omitted).

[15] *Kelty*, 2014 WL 3057887 at *2. "The Delaware Financial Responsibility Law, 21 *Del. C.* Ch. 29, requires all operators of motor vehicles within the State to secure certain insurance to protect and compensate all persons injured in automobile accidents." *Harris v. Prudential Prop. & Cas. Ins. Co.*, 632 A.2d 1380, 1381 (Del. 1993). It is the law that requires minimum levels of certain insurance and that allows insurance policies to include coverage in excess of these minimums. *See* 21 *Del. C.* § 2902(b)(2), (g).

issue. The Superior Court accurately noted that there are two important rationales for requiring Delaware drivers to obtain minimum insurance coverage: (1) ensuring that victims of automobile accidents will be compensated; and (2) encouraging "the Delaware driving public to purchase more than the statutorily-mandated minimum coverage."[16] By requiring insurers to expand coverage beyond that which is statutorily mandated or contracted for by policyholders, we would increase the cost of—and thereby reduce the number of Delaware drivers willing to pay for—excess coverage.

## A. The Language Of § 2118 Is Not Ambiguous: It Mandates Only A $15,000 Limit

The Superior Court did not discuss the language of § 2118 itself in holding that the policy provision at issue was invalid. The statutory limits are unambiguous in requiring that any "owner of a motor vehicle required to be registered in this State" must obtain "minimum insurance coverage" of "$15,000 for any 1 person and $30,000 for all persons injured in any 1 accident."[17] Nowhere does the statute require drivers to obtain additional coverage beyond the $15,000 limit; the choice to do so is at the discretion of the policyholder. Indeed, the statute anticipates that some drivers will obtain additional coverage, and § 2118(d) provides that "[n]othing in this section shall be construed to prohibit the issuance of policies providing coverage more extensive than the minimum coverages required by this section or to require the segregation of such minimum coverages from other coverages in the same policy."[18]

---

[16] *Kelty*, 2014 WL 3057887, at *3.
[17] 21 *Del. C.* § 2118(a)(2)b.
[18] *Id.* § 2118(d).

6

The Superior Court also erred in determining that insurers are not entitled to distinguish among beneficiaries based on relationship status under § 2118.[19] The statute contemplates that certain coverage will be provided only for named insureds and members of their households.[20] It would thus be contrary to the language of the statute for us to require drivers who choose to obtain excess coverage for themselves and their family members who live with them to also pay to cover excess coverage for non-household family members and strangers.[21] In other words, when a policy provides coverage for a risk only for those the statute contemplates are the beneficiaries of the policy, the insured may choose not to buy optional coverage for herself and not extend it to others not considered insureds under the statute generally. As important, even if the statute were silent, the judiciary should not arbitrarily insert requirements penalizing consumers who obtain optional excess insurance for themselves and their family members by subjecting them to an additional judge-made burden to buy that excess coverage for others.[22]

---

[19] *See Kelty*, 2014 WL 3057887, at *3 ("[A]ny policy provision that restricts coverage based on the affiliation of the injured to the insured will be ruled invalid as against public policy.").

[20] *See* 21 *Del. C.* § 2118(a)(2)d ("The coverage required by this paragraph shall also be applicable to the *named insureds and members of their households* for accidents which occur through being injured by an accident with any motor vehicle other than a Delaware insured motor vehicle . . . .") (emphasis added); 21 *Del. C.* § 2118(a)(2)f ("The owner of a vehicle may elect to have the coverage described in this paragraph written subject to certain deductibles, waiting periods, sublimits, percentage reductions, excess provisions and similar reductions . . . applicable to expenses incurred as a result of injury *to the owner of a vehicle or members of the owner's household* . . . .") (emphasis added).

[21] *See, e.g.*, *Selective Ins. Co. v. Lyons*, 681 A.2d 1021, 1025 (Del. 1996) ("An exclusion based on an explicit statutory allowance cannot be disfavored as contrary to the statute's underlying purpose.").

[22] State Farm asked the Superior Court, in the event that it determined that the limitation was an exclusion, for the opportunity to conduct discovery and submit supplemental briefing, because

insurance policy exclusions must withstand additional scrutiny under 21 *Del. C.* § 2118(f), *i.e.*, they must be "customary to the field of liability, casualty and property insurance." 21 *Del. C.* § 2118(f). An exclusion in the context of an insurance policy "is [a] provision which eliminates coverage where were it not for [the] exclusion, coverage would have existed." BLACK'S LAW DICTIONARY 506 (5th ed. 1979); *see also* STEVEN PLITT, ET AL., COUCH ON INSURANCE § 110:19, at 110-39–40 (3d ed. 2013) (observing the broad range of common exclusions). For example, a provision that bars coverage when the accident occurs while the driver is under the influence is an exclusion. *See Bass v. Horizon Assur. Co.*, 562 A.2d 1194, 1196 (Del. 1989). By contrast, a limitation is a "[r]estriction" on coverage. BLACK'S LAW DICTIONARY 835 (5th ed. 1979). The term is usually given to a policy provision, like the pedestrian provision here, which limits coverage above the minimum statutory amount to the named insured and other specified individuals. *See* PLITT, ET AL. § 110:21, at 110-42–43 (explaining that "a policy may validly exclude coverage with respect to permitees generally by limiting coverage to operation by a named insured or a member of his or her immediate family"); 7 AM. JUR. 2D AUTOMOBILE INSURANCE § 30 (2015) (observing that "an insurer and insured may limit the coverage provided under some parts of the policy to the statutory minimum required by the financial responsibility law"); *see also Progressive Preferred Ins. Co. v. Ramirez*, 588 S.E.2d 751, 754 (Ga. 2003) (finding that a restriction on insurance coverage to the minimum statutory coverage "when the insurer's liability is based, not on the policy, but on the 'applicable filing,'" was a "limitation," not an "exclusion"); *Dominguez v. Fin. Indem. Co.*, 107 Cal. Rptr. 3d 739, 749 (Cal. Ct. App. 2010) (classifying as a "coverage limitation" a policy provision "which provides that where coverage otherwise exceeds the minimum limits required by California's 'Financial Responsibility Law,' 'then such amounts in excess of the minimum limits shall not apply to a loss where the operation, maintenance or use of your insured car is by a person other than you, a relative, and an agent or employee of you or a relative'"). Because this is a limitation that restricts coverage above the statutory limits for pedestrians to the named insureds and their relatives, and not an exclusion, we need not reach State Farm's argument that we should remand for further discovery on whether the provision is "customary" as required for exclusions under § 2118(f). *See Harris*, 632 A.2d at 1381–82 (explaining that "no policy exclusions *affecting statutory minimum* coverage will be recognized" without legislative authority) (emphasis added); *Wagamon*, 541 A.2d at 559 (explaining that the exclusion clause denied *all* liability insurance coverage, including the statutory minimum, when the claimant was a member of the insured's household). And although we read the relevant pedestrian provision as a limitation, even if it were an exclusion, the statute itself would require that it be deemed permissible. Because § 2118 focuses on certain insurance being available to the insureds and members of their household, a contract provision that provides for excess coverage limited to that same class is clearly consistent with the statutory regime's own focus and it is difficult to understand how such a limitation could be struck down as a non-customary exclusion. In so stating, we recognize that whether a provision is a limitation or exclusion can be a difficult question to answer because both words can aptly refer to a provision under which coverage is not provided for some risk as to some class of people.

## B. The Amount Of Delaware's Mandatory Minimum Coverage Is Set By The General Assembly, Not The Courts

Although the statute is not ambiguous in its application to this case, we acknowledge the Superior Court's concern that previous Supreme Court decisions have created some confusion about which limitations or exclusions fall afoul of the statute and Delaware public policy. We thus discuss the relevant public policy and our previous decisions in an attempt to clarify the interplay between the statutory language and its purpose as this Court has interpreted it.

This Court has observed on multiple occasions that the purpose of the mandatory minimum coverage requirements under § 2118 is to "provide basic insurance coverage for all personal injury claims arising out of an automobile accident . . . ."[23] By its nature, the coverage scheme is not designed to compensate every car accident victim fully; for many accidents, costs otherwise recoverable under the statute will exceed the $15,000 statutory limit per person, and $30,000 per accident, for bodily injury.[24] If the General Assembly desires to mandate full or even more comprehensive coverage for all car accident victims, it can do so by increasing the limits or reshaping the minimum

---

[23] *State Farm Mut. Auto. Ins. Co. v. Wagamon*, 541 A.2d 557, 558 (Del. 1988); *see also State Farm Mut. Auto. Ins. Co. v. Daprato*, 840 A.2d 595, 598 (Del. 2003) ("The clear purpose of the Financial Responsibility Laws is to provide primary insurance coverage for all personal injury claims arising out of an automobile accident . . . ."); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Fisher*, 692 A.2d 892, 896 (Del. 1997) ("The public policy behind Delaware's automobile insurance scheme is designed to provide significant protection to the injured insured regardless of fault or lack of insurance coverage of the tortfeasor.").

[24] *See* 21 *Del. C.* § 2118(a)(2)b; *see also* 21 *Del. C.* § 2118(a)(2)a (limiting compensation to victims to "reasonable and necessary expenses incurred within 2 years from the date of the accident"). According to a study by AAA, the average cost of an injury from an automobile accident is $126,000, in 2009 dollars. *Crashes v. Congestion: What's the Cost to Society?*, AAA, Nov. 2011, *available at* http://newsroom.aaa.com/wpcontent/uploads/2011/11/2011_AAA_CrashvCongUpd.pdf.

requirements. But it is not the role of the judiciary to require more coverage than that set by the statute. As this Court held in *State Farm v. Daprato*, "A legislative body is far better suited to gather and weigh the legislative facts and hear the arguments of those interested parties over the costs and benefits of extending the policy underlying the Delaware Financial Responsibility Law . . . ."[25]

## C. Invalidating The Provision At Issue Risks Raising Premiums For All Delaware Drivers, Thus Reducing The Probability They Will Purchase Excess Coverage

But given the reality that mandatory minimum coverage cannot always compensate victims fully, this Court noted in *Nationwide General Insurance Co. v. Seeman* that the General Assembly intended to "afford[] *opportunities for acquiring more than the statutorily mandated minimum* amount of automobile insurance coverage."[26] As the Superior Court discussed, this Court has thus held that "absent express legislation otherwise, public policy would prevent policy exclusions that would hinder an individual's ability to acquire coverage beyond the statutorily-mandated minimum amount."[27]

Here, the Lovegroves chose to pay for $85,000 in additional coverage for themselves and their relatives, as defined by the policy. Their purchase of excess coverage in no way hindered the Lovegroves from buying excess coverage that was available to anyone insured in an accident with their vehicle.[28] But, as would be

---

[25] *Daprato*, 840 A.2d at 599.

[26] 702 A.2d 915, 918 (Del. 1997) (emphasis added).

[27] *Kelty*, 2014 WL 3057887, at *3 (citing *Mohr*, 47 A.3d at 502 (quoting *Seeman*, 702 A.2d at 918)).

[28] And, of course, Kelty could have purchased insurance himself to cover his own activities.

10

expected, buying excess coverage for an unidentified set of possible claimants would be much more expensive. Nothing in § 2118 or in previous cases suggests that there is anything improper about purchasing additional coverage for oneself or one's family members. So long as the amount of coverage available for other victims—*i.e.*, the $15,000 that State Farm no longer disputes it owes to Kelty—meets the statutory minimum, the policy is in accordance with Delaware law. Limitations or conditions on excess coverage that do not restrict policyholders from seeking or obtaining additional coverage at a market price are not a cause for concern under the statute. "Insurance coverage in excess of the statutory minimum is not subject to the restraints of the Financial Responsibility Law . . . ."[29]

In this regard, policy limitations are not the only way to "hinder an individual's ability to acquire coverage"; pricing drivers out of the market can be even more detrimental. If insurance companies are forced to provide benefits beyond what policyholders contracted for and what is expressly required under the statute, they will undoubtedly raise the cost of such coverage, and thereby reduce the number of Delaware drivers who opt to pay for anything more than the statutory minimum.[30]

---

[29] *Harris*, 632 A.2d at 1382; *see also Cubler v. State Farm Mut. Auto. Ins. Co.*, 679 A.2d 66 (Del. 1996) (assuming for the sake of argument that the exclusion at issue was valid for amounts in excess of the minimum mandatory liability and no-fault coverage, but invalidating any restrictions of coverage within the statutory requirements); *Universal Underwriters Ins. Co. v. Travelers Ins. Co.*, 669 A.2d 45, 48–49 (Del. 1995) (holding that there was no public policy conflict in excluding coverage above the statutory minimum for those engaged in business activities).

[30] *Cf. Mohr*, 47 A.3d at 496 ("[A]n insured claimant will [pay] a higher premium to purchase an insurance policy whose limits exceeds the $15,000 statutory minimum. To purchase only the minimum coverage, the premium would be less.").

### D. Upholding The Provision Is Consistent With Precedent

As the Superior Court discussed, this Court has struck down insurance coverage exclusions that were against public policy on multiple occasions, including in *State Farm v. Wagamon*[31] and *Nationwide General Insurance Company v. Seeman*.[32] But those cases are distinguishable from this one in that they involved exclusions that were contrary to the language of § 2118 or, where the statute was ambiguous, did not accord with public policy as the Court could discern it from the insurance regime established by the General Assembly. By contrast, the Lovegroves' policy included a limitation on coverage "in excess of the minimum limits required by law for any pedestrian," not including the insureds and their relatives as defined in the policy.[33] Unlike an exclusion, the limitation here did not exclude anyone from the statutory minimum coverage.

For example, the coverage policy at issue in *Wagamon* contained a provision excluding any member of the insured's household from receiving bodily injury coverage. The victim was thus barred from recovering *any amount* under the policy, including the mandatory minimum coverage required by the statute. Because § 2118 does not exempt relatives of the insured from its minimum coverage requirements, this Court determined that the exclusion was invalid.[34] *Wagamon* did not state or suggest that any limitations on coverage based on the victim's relationship to the insured would be invalid if applied solely to excess coverage over the $15,000 minimum.

---

[31] 541 A.2d 557 (Del. 1988).
[32] 702 A.2d 915 (Del. 1997).
[33] App. to Opening Br. at 19 (State Farm Insurance Policy).
[34] *Wagamon*, 541 A.2d at 560.

*Seeman* bears more resemblance to this case, in that the contested policy provision limited only coverage beyond the minimum amount required by Delaware's Financial Responsibility Law.[35] But there is a distinction between *Seeman* and this case. The excess coverage policy at issue in *Seeman* provided for $100,000 of liability coverage for property damage and bodily injury per accident, but excluded "bodily injury to any insured or any member of an insured's family residing in the insured's household" from coverage beyond the minimum limits required by Delaware law.[36] In that case, this Court thus viewed the exclusion, which barred coverage to the plaintiff under his own policy, as contrary to the public policy of encouraging drivers to obtain additional coverage.[37] This Court assumed that few drivers would consider the possibility of covering only strangers, and not oneself and ones' family members, to be a sufficient incentive to pay for extra coverage.

That rationale was even more explicit in *Progressive Northern Insurance Co. v. Mohr*, which relied heavily on *Seeman* in determining that an exclusion preventing the insured from accessing excess PIP coverage under his own policy was invalid:

> The construction advocated by Mohr, and approved by the Superior Court [disallowing a household exclusion], advances the related goals of full compensation of car accident victims and of encouraging policy holders to purchase that protection—in the form of higher coverage limits—for themselves and their household members. The interpretation advocated by Progressive [denying coverage to a family member] would have the

---

[35] *Seeman*, 702 A.2d at 915. Although *Seeman* uses both the term "limitation" and the term "exclusion" in referring to the provision at issue, we view an insurance provision that restricts coverage to the statutory minimum as to persons other than the insured as a limitation. *See supra* note 22.

[36] *Seeman*, 702 A.2d at 916.

[37] *See id.* at 918–19.

13

opposite effect—of discouraging the insured from acquiring coverage needed to provide full protection for himself and his family.[38]

Here, the limitation on coverage is the reverse: the Lovegroves and members of their household are covered for personal injury if they are pedestrians in a car accident as defined under the policy, and the exclusion bars only (legal) strangers.

Most importantly, though, this Court in *Seeman* and *Mohr* interpreted the validity of the respective coverage exclusions at issue solely based on their views of the public policy underlying the statute, not the text of the statute itself. The *Mohr* Court carefully analyzed the language of § 2118 and determined that it was ambiguous before considering which interpretation best furthered the statutory purpose.[39] The *Seeman* Court did not engage in any textual analysis, but focused instead on public policy as discussed in previous cases.[40] Here, where the language of the statute itself is unambiguous in requiring only $15,000 in minimum coverage, it would be error to interject our own view of what Delaware policy should be when the General Assembly has made its intentions clear.

This Court's precedent thus does not support a bright-line rule that any limitations or exclusions based on the relationship between the insured and the victim are invalid. Rather, the appropriate analysis to determine if coverage limitations or exclusions are valid is to start with the language of the statute, and only if it is ambiguous, to consider relevant public policy. Even then, any judicial ruling impinging on contractual freedom

---

[38] *Mohr*, 47 A.3d at 502.
[39] *Id*. at 497–99.
[40] *Seeman*, 702 A.2d at 918–19.

14

should be carefully justified by reference to the public policy as reflected in the overall statutory regime, as that is the legitimate source of public policy in this heavily regulated field.

### E. Kelty's Claim To Be An Occupant Rather Than A Pedestrian Was Not Fairly Presented To The Superior Court

Kelty asserts for the first time on appeal that he was an occupant of the Lovegroves' vehicle, not a pedestrian, so the policy limitation at issue is not applicable. During the proceedings before the Superior Court, Kelty never claimed to be an occupant of the vehicle, and in fact submitted a response to State Farm's initial motion for summary judgment arguing that he was a pedestrian.[41] The reality, of course, is that Kelty, who was in a tree tethered to a rope to the truck when the incident began, may have been neither a pedestrian nor an occupant.[42] Because this Court will only review questions that were fairly presented to the trial court, we will not consider Kelty's alternative argument on appeal.[43]

For the foregoing reasons, the judgment of the Superior Court is hereby reversed.

---

[41] App. to Answering Br. at 8.

[42] Webster's Dictionary defines "pedestrian" as "a person going on foot." Webster's Ninth Collegiate Dictionary 867 (1988). Likewise, it defines "occupant" as "one who acquires title by occupancy" or "one who occupies a particular place." *Id.* at 817. To occupy means "to take up (a place or extent in space)." *Id.*

[43] *See* Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review . . . .").