**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

SYLVONNIA COVERT, )
)
    Plaintiff, )
)
    v. )     C.A. No.: N24C-05-104 FWW
)
NATIONWIDE PROPERTY AND )
CASUALTY INSURANCE COMPANY, )
)
    Defendant. )

Submitted: January 21, 2025
Decided: March 17, 2025

*Upon Nationwide Property and Casualty Insurance Company's Motion for Summary Judgment,*
**GRANTED.**

## ORDER

Kenneth M. Roseman, Esquire, KENNETH ROSEMAN, P.A., 1300 King Street, P.O. Box 1126, Wilmington, DE 19899, Attorney for Plaintiff Sylvonnia Covert.

Paul D. Sunshine, Esquire, REGER RIZZO & DARNALL LLP, Brandywine Plaza West, 1521 Concord Pike, Suite 305, Wilmington, DE 19803, Attorney for Defendant Nationwide Property and Casualty Insurance Company.

**WHARTON, J.**

This 17th day of March 2025, upon consideration of Defendant Nationwide Property and Casualty Insurance Company's ("Nationwide") Motion for Summary Judgment,[1] Plaintiff Sylvonnia Covert's ("Covert") Response,[2] Nationwide's Reply,[3] Covert's Supplemental Response,[4] Nationwide's Sur-Reply,[5] and the record in this case, it appears to the Court that:

1.      Covert was employed as an in-home caregiver.[6] On January 16, 2024, Covert drove her motor vehicle to the residence where she was employed.[7] She parked the vehicle in front of the garage located at the end of the driveway and connected to the residence.[8] She exited the vehicle and entered the house.[9] Once inside, Covert remembered that she left her cell phone in the vehicle.[10] She then walked back outside to retrieve it.[11]

2.      In the process of retrieving her cell phone and exiting the vehicle, she: "(1) reached inside the vehicle, (2) located and picked up the cell phone, (3) backed away from the vehicle, (4) closed the door, (5) looked at the key fob to lock the door,

---

[1] Nationwide's Mot. for Summ. J., D.I. 16.
[2] Covert's Resp., D.I. 17.
[3] Nationwide's Reply, D.I. 22.
[4] Covert's Supp. Resp., D.I. 25.
[5] Nationwide's Sur-Reply, D.I. 28.
[6] Nationwide's Mot. for Summ. J. at 1, D.I. 16.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 2.
[10] *Id.*
[11] *Id.*

and (6) turned and began to walk to her next destination."[12] She contends that the process of exiting the vehicle distracted her from observing the ground conditions near her vehicle causing her to fall on ice and injure herself when she "turned and took a step" from the vehicle.[13]

3. Nationwide insured Covert on the date of the incident.[14] The insurance policy included personal injury protection ("PIP") coverage.[15] Covert's Complaint alleges that Nationwide breached the insurance policy by failing to reimburse her for medical expenses and lost wages.[16]

4. Nationwide moved for summary judgment,[17] Covert responded,[18] and Nationwide replied.[19] Then, at Covert's request, it was permitted to clarify her argument through a supplemental response[20] after which Nationwide submitted a sur-reply on January 21, 2024.[21]

5. First, Nationwide argues that Covert was not an "occupant" of the vehicle.[22] Specifically, she was not "within a reasonable geographic perimeter" of

---

[12] Covert's Supp. Resp. at 1, D.I. 25.
[13] *Id*. at 2.
[14] Compl. ¶ 4, D.I. 1.
[15] *Id.*
[16] *Id.* ¶ 5.
[17] Nationwide's Mot. for Summ. J., D.I. 16.
[18] Covert's Resp., D.I. 17.
[19] Nationwide's Reply, D.I. 22.
[20] Covert's Supp. Resp., D.I. 25.
[21] Nationwide's Sur-Reply, D.I. 28.
[22] Nationwide's Mot. for Summ. J. at 3, D.I. 16.

the vehicle because she was not "within reach" of it, and she was not "engaged in a task related to the operation of the vehicle" because retrieving a cell phone from a parked, stationary vehicle has no bearing on its operation.[23] Next, Nationwide argues that Covert was not injured in a motor vehicle accident.[24] Specifically, the record fails to show that the vehicle was an "active accessory" in causing her injury."[25] Nationwide adds that finding PIP coverage for a pedestrian slip and fall would greatly stretch the statutory and contractual definitions of a motor vehicle accident.[26]

6. Covert argues that summary judgment should be denied because there are facts to support a conclusion that Covert was an "occupant" of the vehicle due to her being in touching distance of it.[27] Covert also argues that summary judgment should be denied as Covert's vehicle was a significant element leading to her injury, and there was no intentional or criminal act that broke the causal link between the use of a vehicle and injuries inflicted.[28] Covert then makes four related points under this argument: (1) her fall and injury occurred because she was distracted by the act of exiting her vehicle,[29] (2) the very act of exiting a motor vehicle renders the vehicle

---

[23] *Id*. at 3-6.
[24] *Id*. at 6.
[25] *Id*. at 6-9.
[26] *Id*. at 9.
[27] Covert's Resp. at 3, D.I. 17.
[28] Covert's Supp. Resp. at 3, D.I. 25.
[29] *Id.*

an "active accessory" to any event that occurs while still in the process of exiting,[30] (3) motor vehicles are intended and used to transport people and their possessions,[31] and (4) the fact that her vehicle had been parked and shut-off prior to her fall did not break "the causal connection between the uses of the vehicle and the injuries inflicted."[32] Lastly, Covert asserts that the Delaware Supreme Court has rejected the caselaw that Nationwide has cited concerning PIP coverage and slip and fall injuries.[33]

7. Nationwide replies that Covert conflates the "occupant" and "active accessory" definitions when she discusses her exit from the motor vehicle.[34] Nationwide adds that Covert erroneously expands the definition of an "occupant,"[35] and her arguments fail to properly demonstrate that the vehicle was an "active accessory."[36] Lastly, Nationwide disagrees that the case law it cited is no longer good law.[37]

8. Superior Court Civil Rule 56(c) provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving

---

[30] *Id.*
[31] *Id.* at 4.
[32] *Id.*
[33] Covert's Resp. at 4, D.I. 17.
[34] Nationwide's Sur-Reply at 3, D.I. 28.
[35] *Id.* at 1.
[36] *Id.* at 3.
[37] Nationwide's Reply at 4, D.I. 22.

party is entitled to a judgment as a matter of law."[38] The moving party initially bears the burden of demonstrating that the undisputed facts support its claims or defenses.[39] If the moving party meets its burden, the burden shifts to the non-moving party to show that there are material issues of fact to be resolved by the ultimate factfinder.[40] When considering a motion for summary judgment, the Court's function is to examine the record, including "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the non-moving party to determine whether genuine issues of material fact exist "but not to decide such issues."[41] Summary judgment will only be appropriate if the Court finds there is no genuine issue of material fact. When material facts are in dispute, or "it seems desirable to inquire more thoroughly into the facts, to clarify the application of the law to the circumstances," summary judgment will not be appropriate."[42] However, when the facts permit a reasonable

---

[38] Super. Ct. Civ. R. 56(c); *Buckley v. State Farm Mut. Auto. Ins. Co.*, 139 A.3d 845, 847 (Del. Super. Ct. 2015), *aff'd*, 140 A.3d 431 (Del. 2016) (quoting *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).

[39] *Sizemore*, 405 A.2d at 681.

[40] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[41] Super. Ct. Civ. R. 56(c); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).

[42] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).

person to draw but one inference, the question becomes one for decision as a matter of law.[43]

9.     Delaware requires the owners of Delaware-registered motor vehicles to obtain certain insurance coverage.[44]  The PIP mandate requires insurance that provides for "[c]ompensation to injured persons for reasonable and necessary expenses ...."[45]  PIP coverage is available to each person "occupying such motor vehicle and to any other person injured in an accident involving such motor vehicle, other than an occupant of another motor vehicle."[46]

10.     To determine whether a claimant is eligible for PIP benefits, the correct analysis is to apply first the disjunctive two-part test in *National Union Fire Insurance Company of Pittsburgh v. Fisher*[47] to determine whether the plaintiff is an occupant, and second, the two-part test in *Kelty v. State Farm Mutual Automobile Insurance Company*[48] to determine whether the accident involved a motor vehicle.[49]

11.     Under the test in *Fischer*, "a person is considered an occupant of the covered vehicle if he or she is either: (a) within a reasonable geographic perimeter

---

[43] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[44] *Friel v. Hartford Fire Ins. Co.*, 2014 WL 1813293, at *2 (Del. Super. Ct. May 6, 2014), *aff'd*, 108 A.3d 1225 (Del. 2015) (citing 21 *Del. C.* § 2118(a)(2)).
[45] *Id.* (quoting 21 *Del. C.* § 2118(a)(2)(a)).
[46] *Id.* (quoting 21 *Del. C.* § 2118(a)(2)(c)).
[47] 692 A.2d 892, 896 (Del. 1997).
[48] 73 A.3d 926, 932 (Del. 2013).
[49] *Buckley v. State Farm Mut. Auto. Ins. Co.*, 2015 WL 4515699, at *2 (Del. Super. Ct. July 27, 2015) (citing *Friel*, 2014 WL 1813293, at *5).

of the vehicle or (b) engaged in a task related to the operation of the vehicle."[50] The Delaware Supreme Court held that "to qualify for occupancy status under the reasonable geographic perimeter prong of the test, the claimant must be in, entering, exiting, touching, or within reach of the covered vehicle."[51] And, "that being 'within reach of' a covered vehicle is tantamount to 'touching' the vehicle because a person within touching distance has as much control over the automobile as the person actually touching it."[52]

12. There is disagreement between the parties on whether Covert was "within reach of" the covered vehicle during the incident under the "occupant" definition in *Fischer*. In her first transcribed statement to Nationwide, in response to being asked whether she was close enough to touch her vehicle, she said, "Yeah. I was very close, I was very close to my vehicle,"[53] maybe two or three feet from it.[54] In her second transcribed statement to Nationwide she said, "I wasn't far from my vehicle," "probably a foot away from my vehicle."[55] Those two statements, along with Covert's affidavit affirming the facts in her Supplemental Response,[56] if believed by a fact finder, would place her within reach of her vehicle and, therefore

---

[50] *Fischer,* 692 A.2d at 896.
[51] *Id.* at 897.
[52] *Id.* at n.18.
[53] Covert's Resp. at 2 (quoting Ex. 2 at 2), D.I. 17.
[54] *Id.* at Ex. 2 at 4, 13.
[55] *Id.* (quoting Ex. 3 at 9).
[56] Covert's Supp. Resp., D.I 25.

8

within its geographic perimeter. At a minimum, when those statements are viewed in the light most favorable to Covert, there is a genuine dispute of material fact regarding her proximity to the vehicle, thereby precluding summary judgment.[57] Still, "[o]ccupancy alone [would be] insufficient to end the analysis for PIP eligibility."[58] The Court must determine whether the accident involved a motor vehicle under *Kelty's* two-part test, because "the separate standards outlined in *Fischer* and *Kelty* must be met in the aggregate in order to support a claim for PIP benefits[.]"[59]

15.      *Kelty* holds that for a claimant's injury to have occurred in an accident involving a motor vehicle the insured vehicle must have been an "active accessory" in causing the injury, and the causal connection between the use of the vehicle and the claimant's injury must not have been broken by an independent act.[60] The Delaware Supreme Court defined active accessory to require "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury."[61]

---

[57] Nationwide has attached a drawing to its Motion (Ex. B, D.I. 19) purporting to show where Covert fell, but the Court finds it unhelpful.
[58] *Friel*, 2014 WL 1813293, at *5.
[59] *Buckley*, 2015 WL 4515699, at *2 (citing *Friel*, 2014 WL 1813293, at *5).
[60] *Friel*, 2014 WL 1813293, at *4 (citing *Kelty*, 73 A.3d at 930).
[61] *Id*. (quoting *Kelty*, 73 A.3d at 931).

16.   In her Supplemental Response, Covert describes the "process of retrieving the cell phone and exiting the motor vehicle."[62]  She "(1) reached inside the vehicle, (2) located and picked up the cell phone, (3) backed away from the vehicle, (4) closed the door, (5) looked at the key fob to lock the door, and (6) turned and began to walk to her next destination."[63]  She then states, "This process of exiting to vehicle distracted the Plaintiff from observing the ground conditions near the vehicle."[64]

17.   Covert argues that had she "not been engaged in the necessary process of exiting the vehicle, and distracted by that process, she could have observed and avoided the ice that caused her fall."[65]  But, this argument, at best, goes more to the occupancy issue under *Fisher* than the active accessory prong of *Kelty*.  In order to be an occupant under *Fisher*, a person either must be within a reasonable geographic perimeter of the vehicle, or be "engaged in a task related to the operation of the vehicle."[66]  Covert's vehicle was not an active accessory to anything.  She had exited the vehicle, looked at her key fob to lock the door, turned and began to walk away.

---

[62] Covert's Supp. Resp., D.I. 25.
[63] *Id.* at 1.
[64] *Id.* at 2.
[65]
[66] *Fisher,* 692 A.2d at 896.

10

18.    In *Shaw v. State*,[67] this Court addressed the "active accessory" prong of the *Kelty* test. Shaw, a Department of Corrections employee, filed a complaint claiming PIP benefits for medical bills and lost wages.[68] As part of his duties, he was required to travel to various locations throughout the State in a State vehicle.[69] On one assignment, Shaw was injured while entering the front passenger side of the vehicle.[70] He stated that he did not have any issues exiting the vehicle originally, nor did he notice any ice at the time of his exit.[71] As he re-entered the vehicle, his left hand grabbed the top handle inside the vehicle and his right hand was on the door.[72] He put his left leg into the vehicle and scooted onto the seat.[73] As he pushed himself onto the seat with his right leg, his right leg slipped out from under him and caused him to injure his right knee.[74] At that point, Shaw stated that he looked down and could see the ice on the ground that caused him to slip.[75] Applying *Kelty,* this Court found that Shaw "fell because of a patch of ice in the parking lot and not the

---

[67] 2021 WL 1291772 (Del. Super. Ct. Apr. 6, 2021), *aff'd*, 2021 WL 5121200 (Del. Nov. 4, 2021).
[68] *Id*. at 1.
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] *Id.*

11

[v]ehicle."[76]   This Court decided that his claim did not qualify for PIP benefits because the vehicle was not more than a "mere situs" to his injury.[77]

19.    Two other cases discussed in *Shaw* are relevant here: *Hatcher v. State Farm Mutual Automobile Insurance Company*[78] and *Lesniczak* v. *State Farm Mutual Automobile Insurance Company.*[79]   In *Hatcher*, the plaintiff fell in a pothole after exiting her vehicle.[80]   The Court determined that the vehicle was not an active accessory because the plaintiff was not "using" her vehicle as she had already parked, exited and began to walk towards her destination.[81]  Since the primary reason the plaintiff fell was due to the pothole, this Court determined that the vehicle was not more than the mere situs of the injury.[82]   In *Lesniczak*, the plaintiff was injured by stepping into a drainage hole while cleaning his vehicle at a self-serve car wash.[83] This Court determined that the vehicle was not an "active accessory" to the plaintiff's injury because the plaintiff was merely cleaning his vehicle, and no facts supported

---

[76] *Id*. at 4.
[77] *Id.*
[78] C.A. No. N15C-12-011 CLS (Del. Super. Ct. Nov. 29, 2016).
[79] 2019 WL 4034351 (Del. Super. Ct. Aug. 26, 2019).
[80] *Shaw*, 2021 WL 1291772, at *3 (citing *Hatcher*, C.A. No. N15C-12-011 CLS).
[81] *Id.*
[82] *Id.*
[83] *Shaw,* 2021 WL 1291772, at *3 (citing *Lesniack,* 2019 WL 4034351).

that he had to clean the vehicle in order to continue using it.[84] As a result, this Court decided that the vehicle was the "mere situs" of the injury.[85]

20. As in *Shaw*, Covert fell because of a patch of ice and not the vehicle. Like the plaintiff in *Hatcher*, the vehicle here was not an "active accessory" because Covert was not using her vehicle - she had exited her vehicle and began to walk towards her destination. The Court is not persuaded that the vehicle should be considered an "active accessory" because the process of exiting the vehicle had distracted Covert and contributed to her fall (presumably, Shaw could be said to have been distracted by the process of getting into his vehicle.) Her mental state after exiting, turning, and beginning to walk away from the vehicle does not make the vehicle an active accessory to her injury. Similar to *Lesniack*, no facts support that the fall occurred from actions necessary to the continued use the vehicle.

21. The Court finds that the vehicle, to the extent Covert was an occupant of it, was the mere situs of her injury. Covert's injury did not involve a motor vehicle under the *Kelty* test as it was not an "active accessory." Because the Court finds that the vehicle was not an active accessory, it is unnecessary for the Court to address the "independent significance" prong of *Kelty*.[86]

---

[84] *Id.*

[85] *Id.*

[86] *Jarrett v. Titan Indem. Co.*, 2017 WL 6343552, at *5 (Del. Super. Ct. Dec. 11, 2017).

**THEREFORE**, Defendant Nationwide Property and Casualty Insurance Company's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**.

/s/ *Ferris W. Wharton*
Ferris W. Wharton. J.